Howeth v. Anderson.

SEWELL HOWETH AND OTHERS V. J. M. ANDERSON.

A covenant to redeliver a steam saw mill at the expiration of the term of the lease in as good order as when it was received, excepting the usual wear and tear and unavoidable accidents, does not render the lessor liable in damages for the accidental loss of the premises by fire.

It may be questioned whether the terms " unavoidable accidents," in a contract of lease like the foregoing, would not embrace the exception of such losses by fire as might occur without fault or negligence on the part of the lessee, and which could not be prevented by the use of ordinary care.

A contract of lease is unlike the contract of common carrier, nor is it governed in its construction, to the same extent, by considerations of public policy. See the opinion of the court for remarks concerning the rules for the construction of contracts of lease, to ascertain the intention of the parties.

Where, on the special verdict of the jury determining the material issues of fact, judgment was rendered thereon by the District Court for the plaintiff, and on a revision of the cause this court on the law of the case arising upon the facts so found, adjudges that the defendants were entitled to a judgment, the cause being brought up by the defendants without a statement of facts, this court will not render such judgment as ought to have been given below, but will reverse and remand the cause for further proceedings.

ERROR from Cherokee.    Tried below before the Hon. C. A. Frazer.

This was a suit brought by James M. Anderson against Sewell Howeth, William M. Sloan, and Cicero Broom, for three thousand five hundred dollars, as damages, for the destruction by fire of a steam saw mill, a quantity of lumber, a lot of tools, and injury to certain machinery belonging to the mill which was not wholly destroyed, all of which was specially set out in a bill of particulars attached to the petition.

As grounds for the action, the petition alleged that on the 26th day of January, 1857, the defendants Howeth and Sloan executed to petitioner their obligation in writing whereby they rented from petitioner his steam saw and grist mill and fixtures, also three yoke of oxen and the carry-log, and every article usually used about said mills, for the period of two months from the 9th day of

February, 1857, and in consideration thereof said "Howeth and Sloan as principals, and Cicero Broom as security, bound themselves to redeliver said mills, oxen, carry-logs and fixtures to said Anderson in as good order as they received them, excepting usual wear and tear and unavoidable accidents—and to pay to said Anderson," &c.

The petition alleged that Broom,, although he represented himself and entered into said contract as surety for his co-defendants, was at the time, and continued to be a copartner with them in the renting and use of said mill; a fact which petitioner alleges was then unknown to him. Petition alleged that on the night of the 18th of April, 1857, (after the expiration of the term limited in the lease,) by the neglect, carelessness and actual imprudence of the defendants, (all of whom it is alleged were jointly in possession,) the said mills and fixtures were destroyed by fire, causing destruction and damage to the other property aforesaid. The special act of carelessness or imprudence charged against the defendants was that, said night being dry and windy, they used about said mills pine torches; and after the mill ceased to run, that they hurriedly left the mills, in consequence whereof the fire resulted, which might have been prevented by the use of lanterns, which petitioner alleges he had provided to be used about said mills.

The defendants demurred generally, and for special grounds of demurrer excepted, because it appears that the lease, by the terms of the written contract, had expired when the fire occurred. Which special exception with several others which need not be set out here, appears to be comprehended properly in the general demurrer.

The defendant Broom answering separately, specially excepted to the averments in the petition which allege his partnership, because the contract does not restrict him from being such partner; and because the effect of charging him as a principal is to contradict and vary the terms of the written contract.

The defendants answered by a general denial; special traverse of the alleged carelessness, and set up the exception in the covenant that the burning was an unavoidable accident, and which

Howeth v. Anderson.

occurred after the expiration of the term limited in the contract sued on. They specially pleaded that when the mill was burned it had been previously, on the same night, redelivered to plaintiff's agents in like good condition as when it was received; and that it was a long established custom of said mill, which was well known to the plaintiff, to use torches in and about said mill; and that they were used whilst the same was under the control of the plaintiff.

Defendant Broom, in addition to the foregoing defences, pleaded that the burning took place several days after the expiration of the lease specified in the written contract sued on, and after the making of a new lease of the mills by plaintiff to his co-defendants, the plaintiff having received the rent therefor, and being estopped thereby from a denial of the same.

Under the instructions of the court the jury found a special verdict as to the matters of fact, as follows, to wit:

That the defendants Howeth and Sloan, by virtue of the written contract sued on, did rent the mill from the 9th day of February, 1857, until the 9th day of April, 1857.

That the defendant Broom was not a partner at the time the contract was made.

That the mill was a steam mill, and was run by the agency of fire; was destroyed by fire on the morning of the 19th of April, 1857, some four or five hours after it had stopped running.

That the defendants could not have prevented the burning of the mill by extinguishing all the fire in and about said mill at the time they stopped running, and when they left the same.

That the defendants did not use more care to prevent the burning of the mill than would be used by a man of ordinary care.

That they could not, by any degree of care before they left the mill on the night when it was burned, have prevented the conflagration.

That the defendants at the end of the term of renting, continued in possession of the mill, and did run the same nine days thereafter, which was without the knowledge and consent of the plaintiff.

That the defendants did not, either before or after the termina-

tion of said renting, notify the plaintiff that they would abandon possession of the same; nor did the plaintiff at any time demand the possession of the said mill, or give the defendants notice to abandon the same.

That the defendants continued in possession of said mill after the termination of said contract for renting, without the consent of the plaintiff.

That there was no new contract between the plaintiff and defendants.

Also, that "the mill was burned, damages done to the same, nineteen hundred and ninety dollars and fifty cents."

Upon which verdict the court rendered judgment against all the defendants for the amount last aforesaid and costs of suit. From which the defendants prosecuted this writ of error,

Assigning as grounds of error:

1. The overruling of the demurrers.

2. That the court erred in submitting to the jury in the charge, the question whether, after the expiration of the time of renting specified in the written contract, there was a new contract between the parties?

3. And that the court erred in not giving judgment on the special verdict, in favor of the defendants instead of the plaintiff.

There was no statement of facts contained in the record. The following endorsement appeared on the written contract sued on, and made a part of the petition, to wit:

"Rec'd payment in full of the rent mentioned within and for nine days additional rent, $292 58.

"May 21st, 1857.                JAMES M. ANDERSON."

*T. J. Jennings*, for the plaintiff in error, Cicero Broom.— The third point in the assignment is the only one I propose to discuss. It is in these words: "The court below erred in giving judgment for the plaintiff, under the finding of the jury, against all of the defendants, instead of giving judgment for defendant Broom against plaintiff."

The first ground I rest upon, under this error, is that the special verdict, viewed in connection with the pleadings, entitled all

the defendants to the favorable judgment of the court—one of discharge from the action. We raise no point as to the fullness of the verdict, or its correctness. We must stand or fall by it; and we fear not to rest the hopes of an innocent surety upon the judgment of this court upon the facts as found by the jury. "There can be no clearer principle than that, where a jury has intervened, and all the issues have been submitted to their decision, their verdict must constitute the basis of the judgment." (Claiborne v. Tanner, 18 Tex. R., 78.) Considering Broom, for the present, in the same position with the other defendants, what does the verdict ascertain against him and them? Treated as tenants by the plaintiff in his petition at the time of the injury, and not charged with unlawfully, or in any way wrongfully holding over, they would seem to be entitled to the full benefit of that position, to say nothing of the acceptance of payment for the rent for the nine days of excess beyond the time of the lease. This position is not changed by anything contained in the verdict. It finds, in effect, that things were allowed to remain *in statu quo,* and go on in the same way for the nine days of excess by all parties concerned. True, it is found that the place was retained by defendants without the knowledge or consent of plaintiff; but it is certain he knew that the lease had expired, and he paid no attention to the matter, permitting things to go on at the pleasure of fate, or as chance might control it. Defendants did not hunt him up and beg him to come take the place; and he never came to ask for it. Now, what was the moral duty of the defendants under such circumstances? The case shows, in every point of view, that the place was ready, and was in the stipulated condition to be redelivered to plaintiff at the expiration of the term, but plaintiff did not come to receive it, and it could not be carried to him. Was there not devolved upon defendants a moral, if not a legal, duty under these circumstances, to look after and take care of the steam mill, consisting in part of machinery that might be injured by neglect; and if they thought proper, after the day for redelivery, to resume the running of the mill, can the plaintiff be heard to complain of the legitimate consequences of this running, after ratifying it by receiving rent for the excess of the time over the term; especially when he

36Y

acknowledges and proceeds upon a continuance of the tenancy in his petition? That the receipt of rent, as a part of the record, endorsed by plaintiff on the written contract of the parties, and made a part of his petition, can be legitimately considered by the court, we suggest is established by the ruling of this court in the case of Holland v. Cook, (10 Tex. R., 241,) to the effect that, "where a judgment goes by default in a suit on a promissory note, and the damages are assessed by the clerk, credits endorsed upon the note must be allowed."

It is matter of astonishment that the plaintiff, having made the instrument containing this acknowledgment a part of his petition, and prevented any issue being made on it in the court below by such admission, should here, for the first time in the progress of this suit, question its existence, or its legal appearance as an established fact before the court. He has as much right to be heard here in denying any other matter admitted by him of record, and therefore not made the subject of an issue in the court below. We, therefore, insist that the District Court erred in giving judgment against any of the defendants upon the pleadings and verdict in this cause.

But we present a still further ground of objection to the judgment against the defendant Broom. The instrument constituting a part of plaintiff's petition, shows him to have been only the surety of the other defendants. The petition claims a right to. hold him responsible, with the other defendants, for an injury which happened to the property, which was the subject of his undertaking, nine days after the expiration of the term to which his undertaking was by its terms limited, by force of the allegation that his position upon the contract as a surety was a mere pretence, and that, in truth, (which was sedulously concealed from plaintiff,) he was, from the beginning to the end, a partner with the other defendants, and, as such partner, jointly with them operated the mill from the beginning of the time of the commencement of the lease up to, and at the time of the injury. Upon this primary and consequential allegation, an issue was submitted to the jury, to which the jury responded that "defendant Broom was not a partner at the time the contract was made." Now, the

charge in the petition is that he was a partner "at the time the contract was made," and, as such, joined, and was concerned with the other defendants in operating the mill all the time, &c.; and the response that he was not a partner, &c., answers the whole proposition in favor of Broom, for the charge of partnership is the basis of the proposition, both in its nature and in the claim set up in the petition of plaintiff. The plaintiff, let us say again, endeavors to establish a responsibility against Broom, continuing beyond the period of his obligation of suretyship in the contract of lease, by the allegation that this mere suretyship was a false pretence, that he was a principal in the undertaking as a partner, and in that capacity operated the mill, &c., jointly with the other defendants. The plaintiff was clearly bound to maintain all the material points of this charge, but the first point and basis of the whole is expressly found against him, and no response is given by the jury to the rest of the charge, because, finding the foundation of the whole charge against him, it was unnecessary for that body to speak further. Thus, the only ground upon which plaintiff claims a right to insist upon the liability of Broom for an injury arising after the termination of his obligation as surety, that he was a principal as a partner with the principals, is not only not established by the verdict of the jury, but is found in favor of Broom. But it is insisted that the obligation of suretyship in the contract did continue till the destruction of the principal subject of the lease, nine days after the expiration of the term of the lease, because the property was not before redelivered according to the covenant of the lessees and their surety. This is a misconception of the nature and object of the covenant. The immovable nature of the property considered, it clearly was not meant that the tenants should carry it to the plaintiff and hand it over to him. If the mills, &c, were in the stipulated condition on the day fixed for their return, the end of the term of lease, and there was no refusal to redeliver upon demand; but, on the contrary, the plaintiff was not there by himself, or agent, to receive the possession; as to the surety, at least, it cannot be plausibly contended that the covenant was not performed *ad diem.* If it had been personal property, and a place had been fixed in the contract

for hire for its return at the end of the bailment, and the bailees had carried it to the stipulated place at the stipulated time, and after waiting during the usual business hours and until night for the bailor, and he not appearing to receive possession in person, or by agent, the bailees had carried it back with them, resumed the use of it, and it had been destroyed by the use of it after the term of hire, it would scarcely be contended that a surety for the redelivery at the stipulated time and place, would, under these circumstances, be responsible for such destruction.

In truth, the covenant to redeliver the mill, &c., in the condition in which it was received, except, &c., on the day upon which it was stipulated that it should be so redelivered, the property being immovable and deliverable in its nature only where it was situated, can be construed only to stipulate that it should be in that condition, except, &c., at that time, and at most, in addition, that the lessees would not refuse to restore it on demand, and on the day and at the place stipulated to the lessor. The whole case of the plaintiff admits that the leased property had been well cared for up to, and was in the stipulated condition at, the day fixed by the contract for the redelivery, and for several days thereafter, and that the rent money was duly paid. What else, even upon ordinary principles of construction, can it be held that the covenant in question stipulates for than that the mill, &c., shall be taken care of with the specified diligence during the term, and at the end of it shall be in the condition which would result from such care and diligence, ready for enjoyment by the plaintiff; and if he did not think proper to come and take it, or even to demand or ask for it, or to give directions about it, or to pay any attention whatever to it, whose fault was this, and who is to suffer from this negligence?—the landlord, who was guilty of the negligence, or the surety whose obligation, incurred to keep the landlord from injury to his property by the negligence of the lessees during the term of the obligation, was fully performed? If, as the plaintiff's case admits, the entire property was in the stipulated condition on the day fixed for redelivery, ready for the reception of the plaintiff, and he did not come to take or to ask for it, but left it unattended to, who trusted the

lessees after that time ?—the surety, who bound himself for their good conduct up to that time only, or the plaintiff, who permitted by reckless inattention the lessees to go on for nine days after that time, without security or even a new unsecured contract of the lessees themselves ? Who of these two, the landlord or surety, has trusted these lessees most after the expiration of the term of the lease ? From whose over-trust has this injury resulted, and who, consequently, must bear the loss ? The judgment of this honorable court will answer. For the sake of a clear illustration we have, therefore, treated the contract of Mr. Broom without invoking the protection of those principles of law which enjoin us to construe the undertakings of sureties with favor to them, and to hold those who claim against them to principles *strictissimi juris*. (The authorities on these rules of construction are cited by Mr. Bonner, and we refer to his citations of Mr. Burge and others.) Upon these principles for the construction of the obligations of sureties, by which it is established that these obligations are to be construed by " the highest and the strictest law" against their adversaries, and with the most liberal allowance in their favor, and in application to this case, that no surety shall be held bound beyond the time which fixes the limit of his obligation, nor shall it be extended to any subject matter, but the one to which his contract relates, we will with confidence leave this point to the court without further discussion.

It remains only that we should briefly consider those points in the verdict, which find that the defendants operated the mill after the expiration of the term of the lease. 1st. A view of the entire transcript will probably satisfy the court that both the judge in submitting, and the jury in finding upon these issues, after Broom was found not to have been a party (as partner) to the lease, meant to include only Sloan and Howeth, (the lessees,) under the term " defendants." For upon other issues they had found that Broom was not a partner, and thereby negatived the allegation of plaintiff, submitted to them as an issue by the court, " that he was a partner of the other defendants, and as such had participated with them in the running and profits of the mill."

But if we are not sustained in this view by the teachings of the record, we think it will readily appear to this court that the judgment of the District Court, in view especially of the allegations and claim of plaintiff's petition, can receive no support from the inclusion of Mr. Broom in the term "defendants," in the points of the verdict in regard to the running of the mill after the expiration of the term of the lease. We repeat here that the plaintiff bases his right of action altogether (*ex contractu*) upon the written and sealed instrument of lease. He charges, as the basis of his cause of action against Broom, that while he is surety only upon the face of the instrument, in point of fact, (this appearance being illusory,) he was a partner with the lessees, Howeth and Sloan, and as such participated with them, &c. Now, the jury by finding that he was not a partner, overturn the entire residue of the proposition dependent upon the allegation that he was a partner, &c., and leave the finding that he participated with the other defendants in running the mill after the expiration of the lease, as unmeaning and wholly inconsistent with the grounds upon which the petition proceeds against him; at least, the judgment against him is thus inconsistent. If Broom, in other words, was not a partner, and was only surety upon the lease, as found by the jury, his obligation, as we trust we have shown, entirely ceased with the time to which his undertaking as surety was limited, and by no possibility can he be held to be bound *ex contractu* beyond the time to which his obligation was limited; and it follows that it is impossible for a judgment to be correctly rendered against him and the other defendants, upon the same allegations of injury to the property of plaintiff by negligence, they being tenants holding over after the expiration of plaintiff's lease to them; and he, although formerly bound for them on the said lease, having been discharged from further liability by efflux of time, the expiration of the term of the lease and the passing of the temporal limit of his obligation before the time of the injury sued for by plaintiff, and constituting his sole ground of complaint against any of the defendants. If, as was found, Broom was not one of the lessees as a partner of the other defendants, and only their surety; if he acted with them in working the mill, especially

Howeth v. Anderson.

after the termination of the lease and the efflux of time beyond the limit of his liability as their surety, he can only be regarded as their servant, agent or other employee, acting for them and under their authority, and in this proceeding, in which all the defendants are pursued upon an allegation of *ex contractu* obligations, his having expired before the happening of the injury complained of, and he having at that time no relation per contract with the plaintiff, there can be no ground of support for a judgment rendered against him upon such a complaint, and especially for a judgment rendered against him jointly with the other defendants, they being under continuing contract relations to plaintiff, and he not. If, on the other hand, it is claimed that Broom was a trespasser in running the mill at the time of its destruction, it may be answered that such a claim is not made in plaintiff's petition, nor sustained by the finding of the jury, but is wholly inconsistent with both; and even here it would be difficult, if not impossible, to maintain a joint action for injury to real property against two persons, one in possession as a tenant holding over beyond his term, but without demand of possession from his landlord, and the other a naked trespasser.

Therefore, in behalf of plaintiff in error, Cicero Broom, we respectfully ask the court not only to reverse the judgment rendered against him in the District Court, but to give such judgment upon the special verdict in his favor as ought to have been rendered in the court below.

*M. H. Bonner*, also for the plaintiffs in error.—The third error assigned is that the court erred in giving judgment for the plaintiff under the finding of the jury against all the defendants instead of giving judgment for defendant Broom. It is evident that under the state of the pleadings in this case, Broom's liability ceased at the expiration of the written contract. It was then the duty of the plaintiff to have been present to have received possession of the mill; he failed to do this or make demand, but instead thereof, received the rent for the subsequent use of the mill by Howeth & Sloan, and his thus treating and recognizing them as his tenants would certainly release Broom. They certainly can

not be held liable for the rent after the expiration of the written contract, and, also in case of accident, at the option of the plaintiff, be held liable as trespassers for all damage. It is further evident that at the time of the burning of the mill, the defendants Howeth & Sloan were in possession of the premises lawfully, and that the same was burned by some unavoidable accident, or else that they had made such delivery of the same as the nature of such property admitted, and that under all the facts and circumstances of the case, as shown by the pleadings and the finding of the jury, the judgment should have been for defendant Broom. Again, if there was not at the expiration of the written contract a new one in law, which would of itself release Broom as a surety, still he would not be liable, because at that time Howeth & Sloan were still lawfully in possession of the mill and premises, and the failure to return was caused by some accident unavoidable and beyond their control. After the expiration of the time of renting in the written contract, the defendants Howeth & Sloan were at least *tenants at sufferance*, and not wrong doers, they having come lawfully into the possession of the premises.

An estate at sufferance is defined to be when one comes into possession of land by lawful title, but keeps it afterwards without any title at all; as, if a man takes a lease for a year and after the year expires continues to hold the premises without any new lease from the owner of the estate, and the true owner cannot maintain an action of trespass against him before entry. (2 Bl. Com., 150; 4 Kent. Com., 114.)

There is a material distinction between cases of a person coming into an estate by act of the party, and afterwards holding over, and by act of the law and then holding over. In the first case, (as the one now before the court,) he is considered a tenant at sufferance; and in the other as an intruder, abator or trespasser. (4 Kent, 116.) Not then being trespassers, were they liable under the clause in the contract by which they were to return the mill, unavoidable accidents excepted? In the answer to the fourth, fifth and seventh charges of the court, the jury find that the mill was burned some four or five hours after it was stopped running, and that the defendants could not have prevented the

burning of the same by extinguishing all the fires in and about it at the time they stopped running the same, and that they could not by any degree of care before they left the mill, on the night it was burned, have prevented the burning of the same. But if Howeth & Sloan were wrong doers in holding over, and had been sued as such, it is respectfully submitted that Broom, as surety, is not liable, unless it be shown that the mill was burned by reason of the holding over, which is disproved by the verdict of the jury. The plaintiff to have been entitled to recover under this state of case must have both averred and proven the damage to have been occasioned by reason of such unlawful holding over. Should the fire in this case have been occasioned after the expiration of the contract, by act of God, as by lightning, which was not improbable, would the court hold that as regards this property, under the facts disclosed by the pleading and the verdict of the jury, that defendants Howeth & Sloan even should be held liable for damage caused by that fire which would have occurred in any event, simply because they had run the mill over the time specified in the written contract; and much less would they hold defendant Broom liable, and when this holding over was without objection on the part of plaintiff. Such construction of this contract surely never entered into the minds of the contracting parties. It is believed that under the more enlightened construction given now to the very strict law governing common carriers and bailments of personal property, (which it is respectfully submitted should not be the rule here, as that law arises from peculiar relation of parties and property, not applicable to the present case, but the application of which as the rule of construction was insisted on by the counsel for the plaintiff, and their construction and application adopted by the court in the trial below,) the defendants Howeth & Sloan even would not be held liable for damage which should not have their wrong as the cause. It is believed that to hold them liable, there must occur both a trespass or wrong doing on their part, and also a damage arising from this cause, neither of which, it is contended, appear in this case.

This court in the case of Davenport v. Fowler, decided at the April Term, A. D. 1858, at Tyler, say that the words " unavoid-

able " and "inevitable" are the same. It was insisted by plaintiff on the trial below, that the terms *unavoidable* and *inevitable* accident, were synonymous with the term " act of God," and that nothing less than an act of God could excuse the defendants under their contract.

In construing contracts we look to the evident intention of the parties. In a common sense view of this contract, and the common and popular construction of the term unavoidable accident, it would certainly embrace such state of facts as that found by the verdict of the jury in this case. But besides, not only from the popular construction, but from the legal construction of the term unavoidable accident, the defendants, from the finding of the jury, would be excused. Mr. Edwards, in his work on Bailments, says there is a difference in the terms "unavoidable accident," and "act of God." The act of God means something in opposition to the act of man. If an act be the result of human agency, though unavoidable, it is the act of man. The wild career of a mob is the act of man; but the wild career of a storm or whirlwind is an act of God. Fire kindled by lightning is an act of God; but if it break out casually, it is not, in a legal sense, an act of God, though it burn with unextinguishable violence. (Edwards on Bailments, 186–8–9; 1 Parsons on Contracts, 635, at top.) Besides, unavoidable accident, so far as the same relates to the burning of the mill, must have evidently, in the minds of the contracting parties, had relation to, and contemplated as coming within the exception, a burning by fire used as a necessary agent in running the mill, provided due diligence was used, as was shown was done by the finding of the jury. The fire, in this case, broke out some four or five hours after the defendants had abandoned running the mill, (as is shown by the verdict of the jury,) by some unforeseen and unknown causality, which, from the finding of the jury, could not have been prevented by defendants, and burned with unextinguishable violence, and under a state of facts embraced both within the popular and legal construction of the term unavoidable accident; for it must have been either from some act of God, as by lightning, or by some means wholly unknown and beyond the control of defendants, and that neither by their con-

Howeth v. Anderson.

tract by the law or equity of this case should they be liable for the damage sued for.

*Donley & Anderson,* for the defendant in error.

WHEELER, C. J.—In order to determine whether the judgment has been rightly rendered for the plaintiff, we must look to the case made by the petition and the special verdict.

In his petition the plaintiff treats the defendants as his tenants rightfully in possession, and seeks to charge and hold them responsible for the injury and loss sustained on the sole ground of carelessness, negligence, and mismanagement on their part, by which he avers the loss was occasioned. There is no averment in terms of a breach of the covenants in the lease; but the gravamen of the complaint is the negligence. The verdict does not support this ground of the action; on the contrary, it fully exculpates the defendants from the charge of negligence. The worst that the verdict establishes is, that the loss was caused by an accidental fire; and the question, as to the principal defendants or tenants in possession is, whether they are liable to make good a loss thus occasioned?

It is deducible from the petition, though it is not averred, that the defendants were holding over after the expiration of the lease when the loss occurred; and so the jury have found by their verdict. Thus continuing to hold, it was at the election of the plaintiff to treat them as trespassers, or as tenants holding under the terms of the original lease. The receipt of rent accruing after the expiration of the tenancy would evidence his election to treat them as tenants, and not as trespassers. (Taylor on Landlord and Tenant, § 65, 465, 468; Story on Con., § 934.) Whether we can look to the evidence of such receipt for rent in this case or not is not material, as the plaintiff, in his petition, has elected to treat the defendants as tenants, holding under the terms of the original lease. As such, are they liable for the loss of the premises by accidental fire? This question was considered in a very elaborate and learned opinion by the Supreme Court of New York, in the case of Warner v Hitchins, (5 Barbour, 666,) upon a lease

containing a covenant similar to the present, and it was there held that the tenant was not liable for a loss thus occasioned. The doctrine of this case is adopted by Mr. Taylor in his learned treatise on the American Law of Landlord and Tenant; where the law upon this subject is thus laid down: "When a tenant is under an *express covenant* to uphold and repair the premises, he is liable to make good all losses, and must even rebuild in case of casualty by fire or otherwise. * * * * If he covenants to keep the premises in repair, and leave them in the same state as he found them, he is merely required to use his best endeavors to keep them in the same tenantable repair in which he found them; for natural and unavoidable decay is no breach of this covenant. But if he covenants to repair generally, this will impose on him a liability to uphold the buildings, without regard to accidents or the necessary decay of the old materials. Where he covenants to surrender the premises at the expiration of the lease, in the same condition they are in at the date of the lease, natural wear and tear excepted, but without any covenant to repair or rebuild, he is not bound, in case the buildings are destroyed by fire during the continuance of the term, to put up new buildings in the place of those destroyed." (Taylor on L. & T., § 357.) Here there was no covenant to repair; but the covenant of said tenants was "to re-deliver said mills," &c., "in as good order as they received them, excepting usual wear and tear, and unavoidable accidents." According to the authorities cited, it is clear that upon this covenant the defendants were not liable for the accidental loss of the premises by fire. I think it may at least be questioned whether the terms "unavoidable accidents," inserted in a contract of lease like the present, would not include the exception of such losses as the verdict of the jury shows the present to have been. It is not like the contract of a common carrier, nor governed, in its construction, to the same extent, by considerations of public policy. Leases are construed, like other written agreements, so as to give effect to the intention of the parties. To arrive at the intention, regard is to be had to the situation of the parties, the subject-matter of the agreement, the object which the parties had in view at the time, and intended to accomplish. A construction should be avoi-

Howeth v. Anderson.

ded, if it can be done consistently with the tenor of the agreement, which would be unreasonable or unequal; and that construction which is most obviously just is to be favored, as most in accordance with the presumed intention of the parties. (5 Barb., 669; 4 Humph., 468.) Looking to the terms and subject-matter of the contract, we do not think it reasonable or fair to conclude that the parties contemplated that the lessors were to become insurers of the property against those casualties which ordinary prudence and foresight could not have guarded against; or that it was supposed or intended that they were to become liable to repair the loss in case of the accidental destruction of the property by fire without negligence or fault on their part. The plaintiff did not frame his petition in any such view of the contract or the liability of the defendants, and we do not think it was the view which the parties had of their rights and liabilities in entering into the contract. It would have been a very extraordinary liability for the lessee to assume; and, if intended, it would doubtless have been clearly expressed in the lease. We conclude that, upon the facts found by the jury, the defendants were not liable to make good the loss of the property, and consequently that there was error in giving judgment for the plaintiff upon the verdict.

The defendant Broom has relied upon the further defence, that he was but a surety upon the contract of lease; but as the maintenance of the defence of his principals necessarily relieves him from liability, it is unnecessary to consider the grounds of his separate defence. The view we have taken of the case would lead to the rendition of judgment for the defendants upon the verdict. But as that might deprive the plaintiff of having the case revised upon the evidence, as he might have done had the judgment been adverse to him in the court below, and he might suffer an injustice by the case taking a direction which he was not bound to anticipate, the judgment will be reversed and the cause remanded for further proceedings.

Reversed and remanded.