JORDAN v. DINWIDDIE et al.　(No. 2382.)

(Court of Civil Appeals of Texas. Amarillo.
June 26, 1918.　Rehearing Denied
Oct. 23, 1918.)

1. LANDLORD AND TENANT ⬤⟹139(2)—RIGHT TO EMBLEMENTS.

It is the general rule that in cases of uncertain tenure, such as a tenancy at will, if the landlord, without fault of the tenant, terminates the tenancy, tenant is entitled to harvest and remove growing crops planted by him in due course of husbandry.

2. EVIDENCE ⬤⟹13—JUDICIAL NOTICE—MATTER OF COMMON KNOWLEDGE — WINTER WHEAT.

It is matter of common knowledge that in the latitude of Texas wheat is sown in the autumn and harvested the following summer.

3. LANDLORD AND TENANT ⬤⟹139(2)—EMBLEMENTS.

Under lease for five years, lessor having right to sell meanwhile, providing in that event lessee should have until next April 1st after notice to surrender possession, etc., and that any lease money should be returned for time yet to run, lessees were not entitled, after sale and notice, to hold after April 1st to harvest crop of wheat in July.

4. DAMAGES ⬤⟹85 — DISCHARGE — PROVISION AS TO DAMAGES—ENFORCEMENT.

A contract may provide a method whereby it may be discharged fixing the measure of damages or compensation recoverable, which is permissible, and such provision will be enforced.

5. LANDLORD AND TENANT ⬤⟹95—TERMINATION OF LEASE—STIPULATION.

Stipulation that lease may be terminated by sale of land is valid, and will be upheld.

6. LANDLORD AND TENANT ⬤⟹139(2)—TERMINATION OF TENANCY AT WILL—EMBLEMENTS.

Doctrine of emblements does not prevent parties from so contracting that lessee in tenancy at will will not be entitled to growing crops on termination of lease, and if agreement is to give up possession, on sale of premises by lessor, on repayment of unearned rent, it will be enforced.

Appeal from District Court, Swisher County; R. C. Joiner, Judge.

Suit by Mrs. L. W. Jordan against W. C. Dinwiddie and another. Judgment for defendants, and plaintiff appeals. Reversed, and rendered for plaintiff.

H. C. Randolph, of Plainview, for appellant. Dennis Zimmermann, of Tulia, for appellees.

HALL, J. Appellant filed this suit against W. C. and J. R. Dinwiddie, on the 30th day of May, 1917, to recover the value of certain wheat alleged to have been converted by the defendant W. C. Dinwiddie, and prayed also for the recovery of the possession of certain lands described in the petition. Defendants answered jointly, setting up a lease of the land by plaintiff to defendant W. C. Dinwiddie, and alleging that the wheat sought to be recovered was planted by them while they held the land under the terms of a lease made with appellant, and that they were en-

titled to said wheat as emblements. The case was tried by the court without a jury, resulting in a judgment in favor of defendants. The case was tried in the court below upon an agreed statement of facts, and is before us upon the same statement. The substance of it is that the land in controversy was leased by plaintiff, appellant here, to defendant W. C. Dinwiddie, by the following contract:

"State of Texas, County of Swisher.

"This lease, contract, sale, and agreement, this day made and entered into by and between Mrs. Lillie W. Jordan, acting for herself and as survivor in community of the estate of her deceased husband, B. J. Steen and wife, Sallie S. Steen, and R. G. Jordan, parties of the first part, and W. C. Dinwiddie, party of the second part, witnesseth:

"That parties of the first part, for the consideration hereafter mentioned, have this day leased and let, and do by these presents lease and let, unto party of the second part, for a period of five years from May 9, 1913, the following described land and premises, together with all improvements thereon, situated in Swisher county, Texas, to wit: All of sections 16, 21, 22, and 15, in block M–9, and sections 115 and 116, and 100 acres out of section 86, being that part of said section east of the railroad, all in block M–8, said county and state, this being subject to sale, however, at any time within the next five years, upon the following conditions:

"Parties of the first part reserve the right to sell same, or part, at any time during the life of this lease; it being understood, however, that, if any part of said land be sold, same shall be only outside sections, and same to be fenced, unless leased by party of second part from his vendee, at the expense of parties of the first part, so as to cut same off from any part remaining unsold out of the above-described property, and, in the event of a sale of any part of said property, possession shall not be delivered by party of second part until after delivery of sixty days' notice to him in writing of such sale, provided that the improved land shall be the last sold, in the event same be sold in parts or parcels.

"It is further agreed that, in the event the entire above described property is sold, including the improved property, party of the second part shall have until the next succeeding April 1st, after the delivery to him of notice in writing of such sale, to surrender possession; that is, from the day of such sale of all of said property, or of the improved part upon which there may be growing any crops, party of second part shall not be compelled to surrender possession until the 1st day of April next succeeding the delivery to him of notice of such sale.

"In the event of the sale of the whole or any part of said land and premises, any lease money paid to parties of first part shall be returned to party of second part for the time yet to run on the year from such sale; that is, party of the second part is to pay for only the part of the year which he uses said property. Party of second part is to keep up said premises in as good repair as when received at his own expense, except such expenses as may be incurred in replacing anything not occurring from reasonable wear and tear and usage and from causes over which he had no control.

"Parties of the first part, for the consideration hereafter mentioned, have also this day bargained, sold, and delivered, and by these presents do bargain, sell, and deliver, to party of second part, all grown stock cattle, calves

---

⬤⟹For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

thrown in, now on said premises, estimated at seventy head, also seven head of mules and ten head of work horses, together with all farming implements and equipments, wagons, harness now on said premises. For the above property party of second part agrees and binds himself to pay for said land the sum of $500 annual lease in advance, payable on the 9th day of May of each year during the life of this contract, and the sum of $60 per head for said cattle and the sum of $2,000 for said mules, horses, farming implements, and equipments above mentioned; the total consideration to be as follows: $500 cash, receipt of which is hereby acknowledged; $3,500 in cash when a certain loan is consummated with Drought & Co., which parties of the first part are now negotiating; the balance to be evidenced by one promissory note executed by W. C. Dinwiddie and S. B. Dinwidde, bearing 10 per cent. interest and payable one year from the consummation of said loan and the delivery to parties of first part of the money coming to them under said loan.

"It is further agreed that, in the event said loan is not obtained, each party hereto is to return all property received by him or them under this contract, and the parties hereto are to be left in statu quo, and all liabilities, in such event, under this contract shall cease and terminate. It is also agreed that the $500 cash shall be placed in escrow in the First National Bank of Tulia, pending the consummation of said loan and to be delivered upon its completion. All taxes and interest are to be paid regularly by parties of the first part on the above-described land. All liens on the personal property above described to be cleared before the consummation of this agreement.

"Witness our hands in triplicate originals, this the 9th day of May, A. D. 1913."

The agreed statement is:

That $500 per year is reasonable rental for the property. That nothing was said by either party relative to any wheat crop that might be planted on the land. That during the latter part of 1916 defendants planted about 300 acres of the land in wheat, prior to the time it was sold to A. B. Rawley, and before they received notice of any such sale, and that plaintiff had notice of such facts. That on the 4th day of December, 1916, appellant gave J. R. Dinwiddie the following notice in writing:

"You are hereby notified that my land, Secs. 115, 116, Blk. M–8, and Secs. 15, 16, 21, 22, block M–9, in Swisher county, Texas, has been sold. As per contract your lease expires April 15, 1917, and you will be required to vacate said land at that time."

Defendants delivered possession of all the land to appellant's vendee, Rawley, on the 1st day of February, 1917, except the acreage planted in wheat, and claimed the crop of wheat under the contract, refusing to turn it over to plaintiff. They delivered possession of the wheat land as soon as the crop had been harvested and marketed, soon after July 1, 1917. Defendants leased all of the land except the wheat land from Rawley, and are entitled to continued use and possession thereof, according to the terms of the lease contract, and as to said wheat land plaintiffs are entitled to judgment for the possession thereof. The only issue in the case is the question: Who is entitled to the wheat growing on the land at the time same

was sold to Rawley, and which has been harvested and sold by defendants? That, in the event plaintiff is entitled to recover, the amount of her recovery shall be $5,178.65, less threshing expenses of $249.20, and harvesting expenses of $800, and marketing expenses of $130.45, and such other refund as they might be entitled to under the contract. That all parties understood at the time of the sale to Rawley that defendants had possession of the land and would claim the wheat crop. The question at issue under the agreement of the parties is whether or not the doctrine of emblements should be applied to protect defendants in their assertion of ownership of the crop.

[1–6] We recognize the existence of the general rule that "he who sows shall reap," and the weight of authority in other states establishes the doctrine that in cases of uncertain tenure, such as a tenancy at will, if the landlord, without fault of the tenant, terminates the tenancy, the tenant is nevertheless entitled to harvest and remove the away-going crops planted by him in the due course of husbandry. 8 R. C. L. "Crops," pars. 8 and 9.

"Leases are construed, like other written agreements, so as to give effect to the intention of the parties. To arrive at the intention, regard is to be had to the situation of the parties, the subject-matter of the agreement, and the object which the parties had in view at the time and intended to accomplish." Howeth v. Anderson, 25 Tex. 573, 78 Am. Dec. 538.

The lease is in no sense ambiguous. It stipulates for possession of the premises by the lessee for a period of five years, subject to the right of the lessor to sell the premises at any time—

"during the life of this lease, * * * and in the event of a sale * * * possession shall not be delivered by party of the second part until after delivery of sixty days' notice to him in writing of such lease."

If the contract had ended here, it is probable that the doctrine of emblements insisted upon by appellee would apply; but the parties further solemnly agreed:

"That, in the event the entire above-described property is sold, including the improved property, party of the second part shall have until the next succeeding April 1st, after the delivery to him of notice in writing of such sale, to surrender possession; that is, from the day of such sale of all of said property or of the improved part, upon which there may be growing any crops, party of the second part shall not be compelled to surrender possession until the 1st day of April next succeeding the delivery to him of notice of such sale."

It is clear from this stipulation that it was not contemplated by either party at the time the contract was executed, that wheat would be planted on the premises, since it is a matter of common knowledge that in this latitude wheat is sown during the autumn months and harvested the following summer. As said by Justice Levy, in his dissenting opinion in Phelps v. Johnson, 181 S. W. 868:

"The lessee, viewing it from his standpoint, could have fairly understood that planting a

crop might effectuate a loss to him if the place were sold and he had to yield up possession; and yet, so knowing, he nevertheless agreed to yield up possession, and thereby to cut off his claim to have further time. The courts cannot make a new contract for the parties."

A writ of error was granted in the Phelps v. Johnson Case, and the Supreme Court (190 S. W. xv) made this notation in granting the writ:

"We incline to think that, inasmuch as the contract provided that the loss should terminate upon a sale, a sale ended all rights under the contract, including the right of occupancy."

Appellee contends in this connection that, even though the right of the lessees to possession may be terminated by a sale, yet under the doctrine of emblements the growing crop is his, and under the well-recognized rule governing the rights of croppers appellees would still be entitled to re-enter for the purpose of harvesting the crops which under the doctrine belonged to them. This contention cannot be sustained in the face of the further stipulation in the contract, as follows:

"In the event of the sale of the whole or any part of said land and premises, any lease money paid to parties of the first part shall be returned to party of the second part for the time yet to run on the year from such sale; that is, party of the second part is to pay for only the part of the year which he uses said property."

This clause fixes the rights of the parties after the termination of the lease by sale, and entitles the lessee to a return of so much of the $500 rent as may be unearned between the expiration of the 60 days' notice and the following May 9th. It would be an unfair construction of the contract which would permit appellees to recover all of the $500 rent, except so much as may have been earned between May 9, 1916, and February 7, 1917, and in addition to this give them crops which the parties never contemplated would be planted and which, under a fair construction of the contract, they knew they might not be able to harvest. Where the contracting parties have fixed the measure of damages or compensation recoverable, in the event of a termination of the contract, the courts will not apply another and different measure. The contract itself may provide a method whereby it may be discharged. This is permissible, and such provision will be uniformly enforced. 3 Elliott on Contracts, pars. 1868, 1870, 1871. A stipulation that a contract of lease may be terminated by the sale of the land is valid, and will be upheld by the courts. Thomason v. Oates, 46 Tex. Civ. App. 383, 103 S. W. 1114; Phelps v. Johnson, supra (Judge Levy's opinion); 1 Tiffany, Landlord & Tenant, pp. 77–80. The doctrine of emblements does not and should not prevent parties from so contracting that the lessee, in a tenancy at will, will not be entitled to away-going crops; and if the agreement is, as we find it in the instant case, to relinquish possession in the event of a sale of the premises by the lessor, upon repayment by him of the unearned rent, the courts should enforce the contract as made and understood by the parties. To award the lessor emblements, in addition to reimbursing him to the extent of unearned rents, would be in effect making a new contract between the parties.

The judgment is therefore reversed, and here rendered that appellant recover of appellees the value of the wheat, less threshing and harvesting expenses, and less the rent unearned from February 2, 1917, to May 9, 1917.

Reversed and rendered.

HUFF, C. J., not sitting, being absent in Austin, serving on committee of judges.