## MARY F. BEALE v. J. R. RYAN.

1. An instrument purporting to convey land which, upon its face, discloses that it was intended as a security that title should be made to another tract, and as indemnity against a lien on such other tract, is a mortgage, though it may recite that upon failure to discharge the lien the instrument shall "remain in full force and virtue as a deed."

2. On a trial involving title to land, when the question is presented whether an instrument in evidence is a deed or mortgage, it is the duty of the court to construe the instrument in charging the jury, and instruct them as to its legal effect.

3. A plea in abatement will not be considered on appeal or error unless the attention of the court below was called to it and a ruling thereon obtained.

4. When a party against whom no liability is alleged, nor relief sought, is made a party defendant for purposes of jurisdiction, and a recovery is

had against his co-defendants, the costs incurred by reason of such mis-joinder should be adjudged against the plaintiff.

5. See opinion for facts upon which it was held error not to charge the jury on the question of homestead.

5. It is the duty of a party prosecuting an appeal, and of the district clerk who prepares the transcript, to see that the same is methodically arranged and properly indexed.

ERROR from Lamar. Tried below before the Hon. R. H. Taylor.

*Hancock, West & North,* for plaintiff in error, contended—

1. That there was error in the omission of the court to construe the instrument relied on, citing Lewis v. San Antonio, 9 Texas, 71, and authorities there cited ; Swift v. Herrera, 9 Texas, 263 ; Wright v. Thompson, 14 Texas, 563.

2. That the instrument which it was claimed by plaintiff below was evidence of his title, was but a mortgage, citing Ruffien v. Womack, 30 Texas, 332 ; Boatright v. Peck, 33 Texas, 75.

3. And that instrument being a mortgage on the homestead, acknowledged by the wife, to secure a debt which did not exist when her acknowledgment was taken, was an absolute nullity, citing Berry v. Donley, 26 Texas, 745; Clayton v. Frazier, 33 Texas, 100; Young v. Van Benthuysen, 30 Texas, 770 ; Eckhardt v. Schlecht, 29 Texas, 133; Nichols v. Gordon, 25 Texas Sup., 113 ; Green v. Chandler, 25 Texas, 157; Roy v. Bremond, 22 Texas, 627; Cross v. Everts, 28 Texas, 532.

4. That a void deed from a married woman can give no color of title, and a party acting under such a deed is a mere trespasser, who can only rely upon his naked possession.

*V. W. Hale,* for defendant in error.—If the deed is a conditional deed, then, at least, so far as the rights of

plaintiff in error go—and she is the only party now liti-
gating—the charge of the court is the law of the case.

This instrument cannot be construed to be a mortgage,
because the relation of debtor and creditor did not exist
between the grantors, Beale and Beale, and J. M. Alex-
ander, but the proof shows that Alexander swapped
Beale and wife a tract of land on Indian creek, in Collin
county, for four hundred acres of the Drewry Auglin
headright; but, upon discovering that McReynolds held
a mortgage upon it, as well as upon the one hundred and
ninety-six acre tract in controversy, it was agreed that in
the event Beale and wife should fail to satisfy the mort-
gage debt, then and in that event this same deed shall be
a full and complete deed, in fee simple, for the land in
controversy.

This instrument shows clearly upon its face that the in-
tention of all the parties was to make it absolute on the
happening of the event of a failure of plaintiff in error and
her husband to remove the encumbrance created by Mc-
Reynolds' mortgage, and this was a duty devolving upon
the plaintiff in error.

The fact of this one hundred and ninety-six acres being
the homestead of Beale and wife, shows clearly that it
was not intended to be a mortgage, because McReynolds
held a mortgage on both tracts; but it was well under-
stood that the homestead tract of one hundred and ninety-
six acres could not be subjected to the payment of that
debt; hence the conditional deed, instead of another
mortgage—a deed in which the wife joined—not a deed
to secure the payment of an antecedent debt, but a deed
(conditional) the consideration for which Alexander trans-
ferred to Beale and wife three hundred and. twenty acres
of land on Indian creek.

This whole transaction shows that it was understood
and agreed that Beale and wife might withdraw this one
hundred and ninety-six acre tract, so to speak,.from the

26

operation of McReynolds' mortgage, and sell and dispose of it conditionally, which they did in the manner pointed out by the law. (See 1 Hilliard on Mortgages, 95 to 107, inclusive.)

The difference between a mortgage and a conditional sale is clearly recognized by the civil law. (2 Story's Eq., Sec. 1019; see also Thompson v. Chumney, 8 Texas, 389, *et seq.*)

It is true that a deed absolute on its face may be shown to be in fact only a mortgage, but this is only where the relation of debtor and creditor exists. (Baxter v. Dean, 24 Texas, 20.)

Neither can it be considered an alternative contract, because the grantee had no power to elect which of the two tracts of land he would take; nor had the grantor the right to compel the grantee to take the tract of one hundred and ninety-six acres, but the right of the grantee to that tract depended entirely upon a failure of Beale and wife to relieve the four hundred acre tract from the encumbrance of McReynold's mortgage, which is not at all pretended they did. (Sage v. Hazard, 6 Barb., 179, Supreme Court N. Y.; Eno v. Woodworth, 4 N. Y., Comst., 249, Court of Appeals, 1850.)

DEVINE, ASSOCIATE JUSTICE.—The defendant in error brought suit in the District Court of Lamar county against J. E. Combs, the administrator of J. M. Alexander, and C. Beale and Mary F. Beale, to recover a tract of one hundred and ninety-six acres of land, which he stated in his petition was the homestead of Beale and wife at the time they signed the paper called by him a conditional deed, and under which, as assignee, he claims title to the land in controversy.

The principal facts in the case are briefly as follows:

C. Beale, on the sixth day of March, 1862, signed an agreement, or obligation, which was acknowledged by

Beale on the same day, and by his wife on the sixth of August, 1862.

That paper recited that Beale and wife had sold to James M. Alexander four hundred acres of land, in consideration of the sum of two thousand five hundred dollars to them paid. That one McReynolds held a lien on the four hundred acres, and also on one hundred and ninety-six acres, a part of the same tract, to secure the payment to him (McReynolds) of a debt.

"And now, to secure to said Alexander a title to said four hundred acres of land, and to indemnify him in case he should incur any loss by reason of said lien, I hereby sell and transfer to the said Alexander the last mentioned tract of one hundred and ninety-six acres, on which our dwelling now stands; and it is expressly understood that should I pay off and discharge the lien that said McReynolds now holds on said tract of land, and save the said Alexander harmless from any loss, then we are to convey to him by general warranty deed the first named tract of four hundred acres, and this writing is to be null and void and of no effect, but otherwise to remain in full force and virtue as a deed for said two tracts herein described.

"It is further agreed, on the part of the said Beale and wife, that he shall pay off and discharge said lien by the first day of August, 1862, and then make a title to said four hundred acres of land."

The lien or mortgage of McReynolds was on the date of the instrument above quoted in suit, and a judgment rendered in his favor on the twenty-second of August, 1862, which judgment directed a sale of the four hundred acre tract, to satisfy the judgment, reserving out of the judgment the homestead tract, and appointing commissioners to lay it off for Beale and wife, which was accordingly done, and their action approved and confirmed by the District Court.

On the twenty-eighth of August, 1862, and six days after the judgment of foreclosure on the four hundred acre tract, and the exempting and setting aside of the homestead, the defendant in error obtained an assignment of the obligation or agreement of Beale and wife to Alexander, and brought, as already stated, suit to recover the homestead tract.

The pleadings are unnecessarily multiplied, and the order in which they are copied by the district clerk not creditable either to his attention or capacity in the performance of some of his plainest duties. Portions of the evidence, made so by the statement of facts, appear in the transcript in the most unlooked for positions—these papers having no reference to the cause, save as facts in evidence, and placed where least expected, with no reference in the index to designate their location. The pleas in abatement filed on behalf of Beale and wife in April, 1869, in the suit of J. R. Ryan v. Beale and Wife, appear on pages 69, 70, 71, 72, and immediately following citations issued in November, 1861, in the suit of McReynolds v. Beale and Wife, when their position, if properly placed, would be on the twelfth and following pages of the transcript. There being nothing in the index to indicate their position, it necessitates an examination of nearly the entire transcript to discover the existence of these pleas, and creates a degree of confusion for which no reasonable excuse can be offered. These remarks are made with a view of calling the attention of the district clerks to the necessity of more care in the making up of the transcripts in future, and of the party bringing up the record to see to its proper arrangement.

In the answer of Beale and wife (after pleading in abatement) the fact is stated and the complaint is made that they, being citizens and residents of Collin county, are sued out of the county of their residence, and compelled to defend in the county of Lamar, when they

are not charged with any agreement to perform any
contract in that county, and the pleadings of plain-
tiff show that the land sought to be recovered lies in
the county of Collin. They charge that the making
J. E. Combs, the administrator of Alexander, a party
defendant, was done for the purpose of compelling them
to appear in Lamar county; that it was a fraudulent at-
tempt to give the court of that county jurisdiction, and
for no other purpose. The pleadings and evidence show
that the facts stated did not justify the bringing of the
suit in any county but the one in which the land was sit-
uated, and that a deliberate wrong was perpetrated in de-
priving them of their legal right to be sued in that coun-
ty. The plaintiff brought his suit to obtain a decree in
his favor for the land of which he claimed to be the owner.
The plaintiff did not, in his original or amended peti-
tions, charge any liability (neither was there any) on the
part of Alexander, or the existence of any claim or lia-
bility against his estate or administrator. There was no
prayer for relief against, or action to be taken by, the ad-
ministrator. There is not the slightest allusion in the
charge of the court to any interest or liability in favor of
or against Alexander's estate or his representative;
neither was there any evidence showing any liability or
interest in the suit or its subject matter, by the estate or
administrator. The administrator being made a party
seems, as charged, to have been done to compel Beale and
wife to defend in Lamar county, and having effected his
purpose, the plaintiff seems to have had no further inter-
est in him.

We think, under all the circumstances of this case, that
the district judge would have been justified in adjudging
all the costs incurred, by reason of Combs being made of
party to the suit, against the plaintiff, J. R. Ryan.

The cause was submitted to a jury, and a verdict ren-
dered in favor of the plaintiff; a judgment was rendered

decreeing the land to plaintiff; a motion for new trial overruled; and the defendant, Churchill Beale, having died during the progress of the cause, Mary F. Beale brings the cause by writ of error to this court.

Among the assignments of error set forth by plaintiff in error is, "First, that the court erred in overruling their two pleas in abatement to plaintiff's petition." These pleas, after being filed, seem to have been entirely overlooked in the court below. It was the duty of the party relying on the pleas in abatement to have called the attention of the court to, and required its action or ruling on, them. Having failed to do so at the proper time, this matter cannot now be heard.

The third assignment, "that the court erred in its charge number three," is supported by a consideration of the pleadings and evidence. The defendants, Beale and wife, averred that the paper on which the suit was brought was an obligation to secure Alexander, the assignor of plaintiff, against a lien existing in favor of McReynolds, and resting on the four hundred acres sold by them to Alexander; and to give Alexander security, they transferred their homestead of one hundred and ninety-six acres for the payment of the lien, conditioned, as already stated in this opinion, that the conveyance was to be null and void and of no effect if the encumbrance was paid off at the time stipulated (the first of August 1862).

The evidence showed, and the paper sued on stated, that it was the homestead or dwelling place of Beale and wife; and the record of the judgment foreclosing the lien or mortgage held by McReynolds upon the four hundred acres, and the adjoining one hundred and ninety-six acres, shows that the jury found, and the court adjudged, the land in controversy to be the homestead of defendants. As such, no transfer or encumbrance, either by conditional deed or mortgage by the husband alone, could destroy the rights of the wife in the same.

The obligation or deed was executed by the husband on the sixth day of March, 1862, and acknowledged by him before the county clerk on the same day.

On the sixth day of August, 1862, Mary F. Beale, the wife, appeared before the same officer and acknowledged, according to the statute, her signature, etc. This was five months after the date of her husband's signature and acknowledgment, and five days after the date agreed on by her husband for the payment of the McReynolds debt. This was, then, an existing debt against her husband; it had matured on the first of August, 1862, and she made herself, after that time, a party to the obligation or debt; and it is scarcely necessary to remark, that in an obligation or conveyance of real estate of this character, her signature without the privy examination passed no interest and conveyed no right. These remarks have reference to the solitary fact, that at the date of its execution by her it was an existing debt, claim, or pecuniary liability; it was neither uncertain, contingent, or future; and as such weakens the position of counsel for defendant in error, that it was a conditional deed, and not intended as a security for the payment of a debt.

The material parts of the obligation and conveyance are as follows:

"Whereas, we, C. Beale, and M. F. Beale, his wife, have sold to James M. Alexander four hundred acres of land; * * * * and whereas, James M. McReynolds holds a lien on said four hundred acres of land, and also on one hundred and ninety-six acres, a part of the same tract; * * * and now to secure to said Alexander a title to said four hundred acres of land, and to indemnify him in case he should incur any loss by reason of said lien, I hereby sell and transfer to the said Alexander the last mentioned tract of one hundred and ninety-six acres, on which our dwelling now stands. And it is expressly understood, that should I pay off and discharge any lien

that said McReynolds now holds on said tract of land, and save. the said Alexander harmless from any loss, then we are to convey to him by general warranty deed the first named tract of four hundred acres, and this writing is to be null and void and of no effect, but otherwise to remain in full force and virture as a deed to both of said tracts.   *   *   *   It is further agreed on the part of said Beale and wife, that he shall pay off and discharge said lien by the first of August, 1862, and then make a title to said four hundred acres of land."

This instrument is not explained, neither is it weakened or strengthened, by any other evidence.  An examination of its principal features will show that it is not in its structure a conditional deed in the sense contemplated by the presiding judge in the court below—that is, an absolute conveyance by Beale and wife of their home-stead to Alexander, conditioned upon their saving harm-less Alexander *from any loss* arising out of the lien on the land.  We do not believe that such was the inten-tion of the parties, that a homestead, estimated at about five thousand dollars, should be conveyed to secure the payment of a lien on four hundred acres that sold, a few months later, under that lien, for $300; or that other equally unreasonable supposition, that if Alexander sus-tained *any loss* by reason of Beale and wife's failure to save him harmless, then, according to the clause twice repeated, "any loss," be it fifty or five dollars, the home-stead, worth several thousand, should be forever passed and gone from the owners and possessors of the same.   To show that nothing more than security against the Mc-Reynolds debt was contemplated, the instrument provides (in the usual terms of a mortgage deed, penal bond, or other obligation), on the payment of the debts, etc., "and this writing is to be null and void and of no effect, but oth-erwise to remain in full force and virtue."   That it was considered by Alexander as an obligation, and not a con-

veyance or title to land, may reasonably be inferred by an examination of his endorsement made on the instrument:   *   *   *   *   *   *   "I, James M. Alexander, of Collin county, do hereby transfer, alien and convey unto J. R. Ryan all my right, title, interest, claim and demand in and to 'this obligation on Churchill Beale and Mary F. Beale, his wife." This assignment was made on the twenty-eighth of August, 1862, and was six days after the judgment foreclosing the lien in that county in favor of McReynolds and the setting apart by the court the tract in controversy as the Beale homestead.

The cases in which courts have decided that instruments of the character of the one sued on are mortgages, no matter how carefully or artfully they may be drawn for the purpose of masking the character of the transaction, are numerous. The case of Ruffier v. Womack, 30 Texas, 332, is one in which this question has been fully and ably discussed, and the court held in that case that the instruments relied on to show deed, or sale of the premises, were, in effect, but a mortgage.

This case presents one equally as clear in favor of the construction that the written instrument signed by Beale and wife was intended as nothing more than a security for an amount due upon the four hundred acres of land ; it was therefore the duty of the court to construe the legal effect of that instrument (as a mortgage), and to declare the same to the jury. There was error in the charge in leaving it to the jury to determine its legal effect, and strikingly so when taken in connection with the following portion of the charge: "If you believe from the testimony that McReynolds held a mortgage upon the land in controversy, and four hundred acres more in the same tract, and that Beale and wife executed the instrument upon condition that Beale should pay off said mortgage, and that Beale failed to pay off said mortgage, and that

Alexander transferred the instrument to plaintiff, you will find for the plaintiff." This portion of the charge might not in another case, or where the plaintiff sought to enforce a money demand, be erroneous; but in this case, where the plaintiff's suit was in the nature of an action of trespass to try title, his only demand or prayer being for a decree vesting the title in him, and the main question raised by the defendants being whether the paper relied on by plaintiff *was at the time of bringing the suit* a deed absolute in its character, or a mortgage to secure a debt, the charge was certain to mislead the jury and preclude the defendants from a verdict in their favor. The seventh assignment, "that the court erred in refusing to charge the jury on the question of homestead," is well taken, as it was all-important to the defendants that the jury should find whether or not it was their homestead, in the event of the judgment being against defendants for the mortgage debt.

For the errors in the charge of the court, the judgment is reversed and cause remanded.

REVERSED AND REMANDED.