### P. P. MARTINEZ v. J. W. THOMPSON.

#### No. 6828.

**Lease Contract—Repairs by Tenant.**—In a written lease for a store house were the stipulations: "It is expressly agreed and understood that the said Martinez (lessee) shall himself bear all the expenses of repairing or improving the premises hereby leased him during his occupancy of the same. * * * The said Thompson (lessor) obligates himself to keep the roof of the house hereby leased in good condition, and he further obligates himself in case the building should be destroyed by fire or otherwise so as to be untenable during the full term of this lease by the said Martinez, to return to the said Martinez that portion of the rent paid for the balance of the year from the time said building becomes untenable." During the year the city authorities condemned the building as unsafe and ordered repairs under order of city engineer. The repairs needed were part of a side wall and whole of rear wall. The landlord made the repairs after notifying the tenant to make them or vacate. The tenant retained possession, and in suit against him for making them, *held:*

1. The word *repair* means to restore to a sound or good state after decay, injury, dilapidation, or partial destruction.

2. The rebuilding the defective walls was repairing the house.

3. Such repairs were included in the express contract of lease, and thereby the tenant was liable for them.

APPEAL from Dallas. Tried below before Hon. George N. Aldredge. The opinion states the case.

*W. H. Johnson* and *R. E. Cowart*, for appellant.—1. By the covenant to bear all the expenses of repairing was meant that the lessee was only bound to take such care of the premises as they would not suffer more injury than the usual wear and tear incident to the use of the property. 1 Taylor's Landlord and Tenant, secs. 343, 357, 358, 359; 2 Wood on Landlord and Tenant, secs. 387, 388, 393.

2. The covenant to bear the expense of "improving" only bound appellant to bear the expense of whatever additions and alterations as he deemed necessary to carry on his business. It did not mean that he was to rebuild. Frank v. Mayer, 16 How. Prac. Rep., N. Y., 220; 2 Taylor's Landlord and Tenant, sec. 524.

3. The court erred in construing the lease as requiring appellant to bear all the expense of repairs, where, by the terms of the lease as set forth in the last clause thereof, appellee bound himself "in case said building should be destroyed by fire or otherwise so as to be untenable during the full term of this lease by said Martinez, to refund to the said Martinez that portion of the rent paid for the balance of the year from the time said building becomes untenable," the evidence showing appellee never tendered appellant any balance of unearned rent.

*Wright & Wright*, for appellee.—1. The covenant to repair or improve binds the lessee to do any and all kind of repairing that is necessary so long as he remains in the building. Taylor's Landlord and Tenant, secs. 361, 364, 367; Ross v. Overton, 2 Am. Dec., 552; 3 Pars. on Con., sec. 233.

2. The covenant to repair as stated in the lease is not controlled by any special stipulation, as it is as much a special stipulation as any part of the lease. Lynch v. Ortlieb, 70 Texas, 727; Taylor's Landlord and Tenant, secs. 327–329; Pars. on Con., sec. 672, and note; 49 Am. Dec., 369.

STAYTON, CHIEF JUSTICE.—On December 8, 1885, appellee rented to appellant a house for the term of one year, for which a rental of $900 was paid in advance, and the instrument provided that the lessee should have the right to renew the lease on same terms from year to year for a period of five years, "while the present building remains standing and is owned by the said Thompson." It was further agreed, in case the house should be torn down after the expiration of the year and rebuilt, that Martinez should have the right to rent it on terms to be agreed upon.

In reference to repairs the lease contained the following provisions: "It is expressly agreed and understood that the said Martinez shall himself bear all the expenses of repairing or improving the premises hereby leased him during his occupancy of same. The said J. W.

Thompson obligates himself to keep the roof of the property hereby leased in good condition, and he further obligates himself in case the said building should be destroyed by fire or otherwise so as to be 'untenable' during the full term of this lease by the said Martinez to return to the said Martinez that portion of the rent paid for the balance of the year from the time said building becomes untenable."

Martinez took possession and made such repairs and improvements as he deemed necessary to fit the house for a retail and wholesale tobacco and cigar store, at an expense to himself of about $3000.

· The house was in the city of Dallas, and some time in October, 1886, the municipal authorities deeming it unsafe condemned it and ordered it to be torn down, but subsequently a resolution was passed requiring the house to be repaired under the direction of the city engineer.

Thompson then notified Martinez to vacate the building or to make the necessary repairs, but this Martinez refused to do, whereupon Thompson caused the repairs to be made under the supervision of the city engineer at a cost of $888.29.

· The house was evidently in bad condition when Martinez rented it, and on this account Thompson stated that he rented it to him at a price much below its rental value when in good condition. Martinez remained in the house while in course of repair, and this seems to have embraced the partial rebuilding of one of the side walls of the house and the entire rebuilding of the rear wall.

This action was brought by Thompson to recover from Martinez the cost of the repairs made under the order of the municipal authorities, and on a trial without a jury a judgment was rendered in his favor.

No question is made as to the necessity for the repairs nor of the authority of the municipal authorities to require them to be made for the safety of the public, and the rights of the parties must depend upon the construction of the lease contract.

The contract shows that defendant obligated himself to bear all expenses of *repairing* or *improving* the property during his occupancy, and the evidence shows that the work for which compensation is sought was done during the year covered by the lease. This would obligate him to bear the expense of everything falling within the meaning of repairs or improvements necessary during the term, except as by the other provisions of the contract he may have been released from such liability. Under the terms of the contract it evidently was intended that Thompson at his own expense should keep the roof of the house in good condition, but no part of the sum sued for was expended in repairing or improving the roof. If during the term the house had been so destroyed by fire or otherwise as to render it uninhabitable, then under the contract it would not have been obligatory on Martinez to have rebuilt or even to have repaired it, for the contract evidently contemplated that in such event the lease should terminate and that a

proportional part of the rent paid in advance should be returned to him.

In view of the fact that Martinez continued to occupy the house during the time it was undergoing repairs after having been requested by Thompson to vacate it or make the repairs, it can not be held that such a state of affairs existed as within the understanding of the parties amounted to a destruction of the house.

The repairs or improvements made not being of the roof of the house, and not being such as were made after such destruction of the house as rendered it uninhabitable, Martinez is liable for their cost if they were such repairs or improvements as his contract obligated him to bear the expense of making. This undertaking is of the most general nature, except as limited by the clauses of the contract to which reference has been made.

It appears that the house was in bad condition when Martinez rented it, and that on this account he paid a less rental than the property would otherwise have brought; and it further appears that he desired to use it for a wholesale and retail tobacco and cigar store, a use to which it seems not to have been before applied, and that to adapt the house to his business it became necessary, or at least desirable, to make alterations or additions.

In view of these facts, we are of opinion that Martinez obligated himself by the contract to bear all such expenses as might be incurred in making alterations or additions such as he might deem necessary or desirable to fit the house for the business which he contemplated carrying on in it, and that such alterations or additions were, within the meaning of the contract, improvements. He, however, obligated himself to bear the expenses of "repairing" the leased premises, and the parties must be presumed to have used that word in its ordinary sense, except as this is shown to have been restricted in its application by other parts of the contract.

The word "repair" means "to restore to a sound or good state after decay, injury, dilapidation, or partial destruction."—*Webster.* The work which Thompson caused to be done was for the purpose of restoring the house to a sound state or safe condition, and this was a repairing, the expense of which defendant promised to pay.

It may be conceded that, in the absence of the express contract to bear the expense of repairs, it would not have been the duty of defendant to make other repairs than such as were necessary to preserve the property in the condition in which it was when he rented it less such deterioration as time and ordinary use of it would work, or to bear the expenses of such repairs as might be made and not necessary to keep it in such condition, but his obligation does not rest alone on the obligation to repair which the law imposes on every tenant, but upon

his express contract made with a knowledge of the condition of the house at the time he rented.

Appellant contracted to pay the expenses of repairing, repairs became necessary and were made by appellee after he had requested appellant to make them or vacate the premises, and he had refused to do either.

The landlord was willing, if the tenant would vacate the premises, to make the repairs at his own expense in view of the increased rent he could obtain for the house if repaired.

There is no error in the judgment, and it will be affirmed.

*Affirmed.*

Delivered April 24, 1891.