NORMAN v. STARK GRAIN & ELEVATOR
CO.  (No. 8609.)*

(Court of Civil Appeals of Texas. Dallas.
Jan. 21, 1922.  Rehearing Denied
Feb. 25, 1922.)

1. Evidence ☞461(1)—Understanding of par-
ties gathered from terms of writing, and not
from oral testimony.

The understanding of the parties to written
instrument must be gathered from the plain
terms thereof, and not by what oral testimony
may or may not show with reference to the
operation of the terms on the minds of the
parties.

2. Trial ☞352(1)—Special issue as to under-
standing of parties in action involving ques-
tion whether clause was incorporated in lease
by mutual mistake held erroneous.

In action on lease involving issue as to
whether clause, requiring lessee to take care
of the property and its fixtures and to suffer
no waste, was incorporated therein by mistake,
instruction submitting special issue as to
whether it was "understood and agreed as a
part of the lease contract in controversy that
the defendant was to take good care of the
property and not suffer any waste" held er-
roneous, in that it called for a finding as to
obligation imposed by contract as written, and
not a finding as to whether such clause was in-
corporated in the contract by mistake.

3. Appeal and error ☞1062(1)—Failure prop-
erly to submit issue as to whether clause
was incorporated in lease by mistake harm-
less, in view of obligation imposed on lessee
by law.

In action for rent, in which lessee claimed
clause requiring it to take good care of the
property and its fixtures and suffer no waste to
have been incorporated in lease by mutual mis-
take, the failure properly to submit such issue
to the jury was harmless, since such obliga-
tion was imposed on lessee by law, and would
have become a part of the lease even if the
clause had not been expressly incorporated
therein.

4. Appeal and error ☞754(1)—Special find-
ings not questioned accepted as establishing
facts found.

Findings of jury in answer to special issues,
not questioned on appeal, must be accepted as
conclusively establishing the facts found.

5. Landlord and tenant ☞160(3)—Lessee held
not required to restore property after col-
lapse without negligence.

Obligation of lessee of grain warehouse to
"take good care of the property and its fixtures
and suffer no waste" did not require lessee to
restore warehouse after its collapse without
any fault or negligence on the part of lessee,
but merely required it to take ordinary, rea-
sonable care of the property during the term
of the lease, and make such repairs necessary
to return warehouse to lessor at the termina-
tion of the lease in as good condition as when
received by lessee, reasonable wear and tear
excepted.

6. Landlord and tenant ☞101, 192(1)—De-
struction of building terminated relationship
and liability for rent.

Where lease prohibited use of building for
purposes other than a grain warehouse, the
destruction of the building, making its use for
such purpose impossible during the remainder
of the term, through no fault or negligence on
the part of lessee, terminated the relation of
landlord and tenant, and released lessee from
obligation to pay rent.

7. Landlord and tenant ☞233(3)—Evidence
insufficient for submission of whether col-
lapse of warehouse was caused by act of God.

In lessor's action for rent following col-
lapse of leased warehouse, evidence held insuf-
ficient for submission to the jury of whether
the destruction of the building was caused by
an act of God.

8. Appeal and error ☞1062(1)—Insufficiency
of evidence for submission of issue held
harmless, in view of finding of answer to
other special issue.

In lessor's action for rent following col-
lapse of a building, insufficiency of evidence
for submission of whether collapse of building
was due to an act of God held harmless, in
view of finding that destruction was not due
to any fault or act of negligence on the part of
lessee.

Appeal from District Court, Hunt County;
Wm. Pierson, Judge.

Suit by W. F. Norman against the Stark
Grain & Elevator Company. Judgment for
defendant, and plaintiff appeals. Affirmed.

Clark & Sweeton, of Greenville, for ap-
pellant.

B. F. Crosby and M. B. Harrill, both of
Greenville, for appellee.

VAUGHAN, J. Appellee leased appellant's
sheet iron warehouse at $60 per month for
one year, which collapsed and fell while it
was occupied by appellee under and during
the term of said lease contract as a grain
house. The following questions now arise:
(1) Is appellee bound to pay rent after the
destruction of the leased premises? (2) Is
appellee liable for the cost of rebuilding the
warehouse?

Appellant brought suit against appellee for
three months' rent, aggregating $180, and
for the cost of rebuilding the improvements
by appellant at his own expense, amounting
to $2,102; appellant basing his charge of
liability against appellee upon two grounds:
(1) That the lease contract provided "that
the lessee shall take good care of the prop-
erty and not suffer any waste;" (2) that the
collapse of the building was caused by the
negligence of appellee in overloading it and
in the manner of storing the grain therein—
further alleging that the building was prac-
tically destroyed by the collapse and fall,
and that it had to be substantially rebuilt.

Appellee pleaded (1) general denial; (2) that it did not contract or agree "to take good care of the property and not suffer any waste," and that if the lease contract contained said clause same was included therein by mistake, and that it was not the intention of the parties that said clause should be a part of the written contract, and that there was no agreement between the parties that such obligation should be included in the contract. Appellee pleaded other matters in defense, including a counterclaim for damages alleged to have been sustained by appellee on account of certain acts of negligence of appellant, which additional pleadings will not be further noticed, same not being involved in this appeal.

The lease contract was executed on the 23d day of May, 1919, by which appellant leased to appellee the following described property, to wit:

"Lying and being situated in the city of Greenville, Hunt county, Texas, being the W. F. Norman sheet iron warehouse located on East Lee street, just east of the right of way of the Cotton Belt RR and on the south side of said street,"

—for the term of one year from the 1st day of June, A. D. 1919, and as rent for said leased premises appellee contracted to pay appellant $60 per month in advance on the 1st day of each month, the first payment due June 1, 1919. Said contract containing the following clause, which will be very material in the discussion of the isues presented by this appeal, to wit:

"That the lessee shall take good care of the property and its fixtures and suffer no waste."

The warehouse fell in October, 1919, and could not be used for any purpose afterwards until rebuilt. Appellee paid rents for nine months, to wit, to March 1, 1920. On or about March 1, 1920, appellee, on account of the destruction of said warehouse, vacated same, and refused to pay rent for the remaining three months, aggregating $180, under the terms of said lease contract. Appellant rebuilt said warehouse, the work restoring same in condition to be used as a warehouse being completed about June 1, 1920, the date said lease contract between appellant and appellee expired. When the warehouse was abandoned and returned to appellant by appellee it was seriously damaged and badly in need of repair. Appellee refused to repair the building or to pay for the same, and appellant was compelled at his own expense to have same repaired, and did so at a reasonable and necessary expense of $2,102. The leased premises were "to be occupied as a grain warehouse and not otherwise."

At the close of the evidence appellant moved the court to instruct the jury to find a verdict in his favor for the sums aggregating $2,282. After the verdict was returned, he moved the court to enter judgment in his favor for said amount. Said motions were overruled.

Appellee filed motion for court to enter judgment that appellant take nothing by his suit, and that appellee take nothing by its cross-action, which was sustained, and judgment entered accordingly.

The cause was submitted by the trial court to the jury on special issues. The material issues and findings of the jury thereon necessary to be considered in this appeal, are as follows:

"Question No. 1. Was it understood and agreed as a part of the lease contract in controversy that the defendant was to take good care of the property and not suffer any waste? Answer No. 1: No. * * * Question No. 13 (a): Was defendant negligent in the manner or quantity of storing its grain in the building? Answer No. 13 (a): No. Question (b): If so, was its negligence the proximate cause of the fall and injury to plaintiff's building? Answer (b): No."

Special issue submitted to the jury at the request of appellee:

"Was the fall and injury to the building in controversy and its contents caused by an act of God? Answer: Yes."

Appellant, by his third assignment of error, questions the submission of the following special issue to the jury:

"Was it understood and agreed as a part of the lease contract in controversy that the defendant was to take good care of the property and not suffer any waste?"

Contending that the contract, being in writing, and the terms thereof not ambiguous, it was the duty of the court to instruct the jury as to the legal effect thereof.

The contents of the contract as to the clause submitted by said special issue were put in issue by the following plea:

"That if said contract contains any agreement on the part of the defendant to take good care of said property and prevent any injury or waste thereto, the same was included in said contract by mistake; and without the knowledge and consent of the defendant, and there was no intention on the part of the plaintiff or the defendant that such agreement should be incorporated in said written contract, and that there was no agreement between the plaintiff and the defendant that such obligation on the part of the defendant should be included in said contract; that the defendant did not contract or agree to keep said building in repair or from waste, or to repair any such damage as is alleged by the plaintiff to have occurred to said building."

Which plea alleges, in effect, a mutual mistake on the part of appellant and appellee in including as a part of the contract executed by them the clause "that lessee shall take good care of the property and its fixtures and suffer no waste." In other words, that said clause found its way into said contract

through the mutual mistake of the parties thereto, and therefore constituted no part of the obligation to be evidenced by said written instrument.

On this issue the following evidence was introduced: Appellant Norman testified:

"I would not have signed the contract if I had not thought that clause that they would not damage fixtures was not in there—would not damage the building; there were no fixtures in that building. I wanted that contract like any other contract I had ever heard made, and that he was to turn this building over to me as good as he got it, and I thought it was in that shape."

J. L. Webb, agent for appellee, testified:

"We both understood what we were signing. After the contract was signed, I took possession of the building on the 1st of June for the Stark Grain & Elevator Company."

J. T. Stark, appellee's president, testified:

"I had a copy of this rental contract in my files. Witness, being asked, 'You never raised the question at all until yesterday when you filed your answer about any part of this contract left in here being rightfully left in, did you,' answered, 'We didn't understand any part of it was left in.' I had a copy of the contract, and had occasion to go over that copy often since this collapse of the building. I had never said to him before that day that there was a clause in the contract that ought not to have been there, and we didn't state it that day because we didn't consider there was a clause in the contract; we discussed the contract with Mr. Norman just like we did in that letter. I never on that day talked with him and stated to him that there was a specific clause in the contract that ought to have been eliminated. The discussion with Mr. Norman was with reference to the contract as a whole."

[1] Conceding that the above evidence was sufficient for the court to submit to the jury the issue of mutual mistake as pleaded by appellee, the question submitted was not authorized, as same did not call for a finding of the jury on the issue whether or not the clause "that the lessee shall take good care of the property and its fixtures and suffer no waste" was included in the contract by mutual mistake of the parties thereto. The issue as submitted to the jury called for a finding as to the legal effect of the written lease contract; to be specific, for the understanding and agreement of the parties, when same was clearly expressed by the terms of the written instrument before the court. The understanding of the parties must be gathered from the plain, expressive terms of the written instrument and not by what oral testimony may or may not show with reference to the operation of the terms on the minds of the parties. Whether or not the parties agreed to perform certain things, and whether or not the performance of such things so expressed in the contract was understood by the parties, must be gathered from the terms of the contract by the court and the legal effect stated in the instructions to the jury. Shepherd v. White, 11 Tex. 346; Beale v. Ryan, 40 Tex. 399; Bruner v. Strong, 61 Tex. 555, in which it is held that parol evidence is inadmissible for the purpose of giving a written contract, clear in its terms, a meaning different from that which the written words import, unless fraud, accident or mistake intervened and prevented the use of such language as was intended to convey the real meaning and intention of the parties in which it may be shown; Soell v. Hadden, 85 Tex. 182, 19 S. W. 1087, the court holding, "If there is no ambiguity about an instrument, and the intention of the parties may be ascertained from its terms thereof without explanation, it is the duty of the court to construe it for the jury, and instruct them as to the rights of the parties," and that "parol evidence is not admissible to show the construction placed upon a written contract by the parties, where the intent is expressed in the writing."

[2, 3] We do not wish to be understood as holding that under the case as made by the pleadings and evidence in this respect it would not have been proper for the court, by appropriate charge, to have submitted the issue of mutual mistake, but we do hold that, as submitted, the trial court committed error as above set forth. However, in the view we take of the case, such error becomes immaterial, for, regardless of whether or not the contract contained the provision "that the lessee shall take good care of the property and its fixtures and suffer no waste," the obligation to repair which the law imposes on every tenant, to wit, "to make such repairs as are necessary to preserve the property in the condition in which it was when rented, reasonable wear and tear excepted," became as much a part of the contract when executed as if written therein, in the absence of express terms contained in the contract relieving the lessee from such obligation. Martinez v. Thompson, 80 Tex. 568, 16 S. W. 334; O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628.

Therefore, in passing upon this appeal, the provision "that the lessee shall take good care of the property and its fixtures and suffer no waste" will be considered and given effect as if no question as to same being a part of the lease contract involved had been raised. Therefore the result of this appeal is made to depend upon the construction to be given said clause.

[4] In answer to special issues properly submitted, the jury found that appellee was not negligent in the manner or quantity of storing its grain in the leased building, and that the fall and injury to appellant's building was not the result of negligence on the part of appellee, which findings are not in any respect questioned on this appeal—therefore must be accepted as conclusively es-

tablishing the facts so ascertained by the verdict of the jury.

Appellant leased to appellee his sheet iron warehouse, no part of the real estate owned by appellant on which said structure was located being expressly embraced within the terms of the lease. Said warehouse was leased to be occupied as a grain warehouse, and not otherwise. The leased premises, without any negligence or fault on the part of appellee, were destroyed to such an extent that same could not be used as a grain warehouse, it being necessary to rebuild same so as to re-establish its identity and usefulness for such purpose, which was accomplished by appellant about June 1, 1920.

[5] Construing the clause under discussion in connection with the above facts, which should be done in order to properly pass upon the case as made by appellant, we have reached the conclusion that the clause "that the lessee shall take good care of the property and its fixtures and suffer no waste," in its legal effect, is only equivalent to a covenant "to uphold and repair," or "to repair," or to a covenant to "redeliver or restore to the lessor, in the same plight and condition, usual wear and tear excepted," or other words of like import; and that such clause did not create the liability on the part of appellee to restore appellant's warehouse destroyed by casualty without any fault or negligence on the part of appellee. In other words, said clause does not bind the appellee to rebuild the leased premises destroyed by the elements as above set out, or impose the burden of the loss in any respect on appellee. The language of the clause under discussion clearly excludes the idea that it was in the contemplation of appellant and appellee that appellee should be bound thereby to do more than take ordinary reasonable care of the property according to its nature during the term of the lease, making such repairs necessary to return to appellant at the termination of the lease the leased premises in as good condition as same were in when received by appellee, reasonable wear and tear excepted. To give the language employed the effect contended for by appellant would be to make appellee an insurer of the property against destruction by the elements, which we do not think is authorized by the language employed by appellant and appellee to express their understanding of the contractual relations assumed by them, and certainly we cannot give to language employed a meaning other than that which must be gathered from the plain import of the terms in which the contracting parties saw fit to express their mutual understanding. Howeth v. Anderson, 25 Tex. 557, 78 Am. Dec. 538; Miller v. Morris, 55 Tex. 412, 40 Am. Rep. 814.

[6] Following the clear and convincing principles of law announced by the above authorities, we have reached the conclusion that the clause in the lease contract before us for review did not bind the appellee to rebuild in case of casual destruction of the property by the elements as established by the proof, or impose the burden of the loss on appellee; the jury having found that the destruction was not due to any fault or act of negligence on the part of appellee. The destruction of the leased premises being complete so that same could not be used for the purposes for which same were leased, to wit, as a grain warehouse, the use of same for any other purpose being prohibited by the terms of the lease, such destruction terminated the relation of landlord and tenant, the leased premises not being restored until after the expiration of the term, as the lease of the improvements located on the land owned by appellant only operated to pass to appellee such interest in the subjacent land necessary to the enjoyment of the leased premises, and such interest ceased with the casual destruction of same by the elements without any fault or act of negligence on the part of appellee, and thereby the estate from which the rent was to issue ceased to exist, and appellant, as the landlord of appellee, had only the right to recover the rent proportionate to the period of the term antecedent to the destruction of said leased premises, and, appellee having paid for the full term up to the time said leased premises were vacated on account of the destruction of same, appellant was not entitled to recover rent for the remaining three months of the term, being the period of time intervening between the abandonment of the premises by appellee and the restoration of same by appellant. McMillan v. Solomon, 42 Ala. 356, 94 Am. Dec. 654; Buerger v. Boyd, 25 Ark. 441; Ainsworth v. Ritt, 38 Cal. 89; Japhet v. Polemanakos, 160 S. W. 416; Beham v. Ghio, 75 Tex. 87, 12 S. W. 996; Post v. Brown, 142 Tenn. 304, 218 S. W. 823.

[7] Appellant's fourth assignment of error, "It was error to overrule appellant's motion for a new trial because the court erred in giving defendant's special charge No. 1, submitting the question of the 'act of God,' for the reasons shown in his objections thereto, presented in writing before said charge was given," must be sustained in part, as the proof was not sufficient to justify the court to give to the jury special charge No. 1, requested by appellee, submitting the issue:

"Was the fall and injury to the building in controversy and its contents caused by the act of God?"

The evidence on this issue being as follows:

J. T. Stark testified:

"When I was down there, there was water around there to the extent that the water was all in the basement or wherever the water stood under the house; the house was lower under there than the side, and was full to the floor and running into the floor, where it was

broken; the water was running from this basement where it was standing—this pool under the house. Yes; there was other water about the premises, I think there was a small amount of water standing in the streets. Yes, sir; at that time, there had been a big rain, there had been a very large rain on the night of the 27th, and there had been rain before that. Yes; I saw water under the granary. Yes; that could have been built, to keep the water out. I don't think it would have been possible to drain and ditch it to drain the water off; the ground is too flat. Yes; I think they could have kept the water out from under the building, but I don't think they could have drained it out after it got there; it could have been ditched to keep it out from under the building."

J. L. Webb testified:

"Water was all running under it like a creek at the time I went there, and I could not get to but one point, because it was almost a creek all around it."

See Mistrot-Calahan Co. v. M., K. & T. Ry. Co. of Texas et al., 209 S. W. 775.

[8] However, this error in the state of the record becomes harmless, as the jury found on other issues submitted that the destruction of the building was not due to any fault or act of negligence on the part of appellee. Schaff v. Morris, 227 S. W. 199, in which the court held:

"Where the case is submitted upon special issues, and a separate and distinct finding of negligence is made by the jury in conformity with the pleadings and proof, although a different and additional finding of negligence is made unwarrantedly under a wrong, but distinctly submitted, issue, the valid finding should be upheld and the improper one disregarded; the liability being the same if the latter were eliminated."

The appellant in his brief cites several authorities as sustaining his position that the obligation resting on appellee to repair the leased premises required the appellee to restore same at his own cost to the condition said premises were in when received by him, notwithstanding the casual destruction by the elements, so that same could not be used for the purposes authorized by, and limited to, by the lease contract, which we think are clearly distinguishable on principle from the authorities cited in support of the results reached by us, to wit, Martinez v. Thompson, 80 Tex. 568, 16 S. W. 334. In this case appellee, as landlord, entered into a lease contract with appellant as tenant, containing the following provisions:

"It is expressly agreed and understood that the said Martinez shall himself bear all the expense of repairing or improving the premises hereby leased him during his occupancy of same. The said J. W. Thompson obligates himself to keep the roof of the property hereby leased in good condition, and he further obligates himself in case the said building should be destroyed by fire or otherwise so as to be 'untenable' during the full term of this lease by the said Martinez to return to the said Martinez that portion of the rent paid for the balance of the year from the time said building becomes untenable."

The house was in the city of Dallas and, some time in October, 1886, the municipal authorities, deeming it unsafe, condemned it, and ordered it to be torn down, but subsequently a resolution was passed, requiring the house to be repaired under the direction of the city engineer. Thompson notified Martinez to vacate the building or to make the necessary repairs. Martinez refused to do so, whereupon Thompson caused the repairs to be made under the supervision of the city engineer at a cost of $889.29. Suit was brought by Thompson to recover from Martinez the cost of the repairs. By the lease contract Martinez obligated himself to bear all expense of repairing or improving the property during his occupancy. The court held this would obligate Martinez to bear the expense of everything falling within the meaning of repairs or improvements necessary during the term. The building was not destroyed by the elements, nor in making the improvements was it necessary to rebuild the entire structure; the work performed and material used being only necessary to improve or repair the original structure leased.

It was not necessary for the learned judge in rendering the opinion for the Supreme Court to have given undue legal effect to the word "repairing," when the contract embraced the more comprehensive and burdensome obligation created by the word "improving," which, alone, without the use of the word "repairing," would have been language broad enough to have justified the conclusion reached in disposing of the issue before the court. In this connection, we think it worthy of note that neither the case of Howeth v. Anderson, supra, or Miller v. Morris, supra, are referred to in the briefs or cited in the opinion in that case.

The case of O'Connor v. Andrews, 81 Tex. 28, 16 S. W. 628, was a suit brought on the following state of facts: Appellee sought to recover damages for injuries alleged to have been received by his wife by the falling of a cornice and fire wall from building owned by appellant. The building was leased to several tenants, each holding separate parts. The terms and conditions of none of the leases were proved. Appellant, among other things, urged as a defense that at the time the cornice and fire wall fell he was not in possession of any part or parcel of the building, but that the whole of it was leased to tenants, who were under obligation to keep the same in repair. Many issues not necessary to be noticed to differentiate the case were involved. In passing on the main issues as presented by appellant as a defense

above referred to, the court disposed of same as follows:

"The rule of law is well settled that the tenant, subject to the following exceptions, is bound to repair the premises leased to him: (1) Except where the landlord has by expressed agreement between the tenant and himself agreed to keep the premises in repair; (2) where the premises are let with a nuisance upon them, by means of which the injury complained of is received. In the absence of any contract upon the subject of repairs, the tenant, and not the landlord, is responsible for them and for damages resulting from the want of repair."

Appellant, the landlord, was held liable for the injury on the ground that the cornice and fire wall were in a dangerous condition at the time he leased the building. The question in reference to his tenants being bound to make the repairs so as to keep said cornice and fire wall in reasonably safe condition was before the court only indirectly, and it may be conceded that under the facts in that case, if the cornice and fire wall had been included in the lease to any of the lessees, then the liability would have rested upon such lessee without creating any conflict between the holding in that case and the conclusion reached by us in the instant case. The falling of the cornice and fire wall did not destroy the leased building or impair the usefulness of same for the purposes for which it was leased, and the destruction or the condition produced thereby would have rested upon the tenant under the covenant to so repair the leased premises as to return same to the owner in as good condition as when received, reasonable wear and tear excepted.

We do not deem it necessary to differentiate the decisions cited from other jurisdictions, and shall be content with the discussion of the above, which we think the most important cited by appellant anent the legal effect to be given the clause of the contract under discussion which determine this appeal.

We find no error in the proceedings for which we think the judgment should be reversed, and it is affirmed.

Affirmed.

---

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

*Writ of error refused April 12, 1922.