## ORR v. VANDYGRIFF.
### No. 3045.

Court of Civil Appeals of Texas. Waco.
Sept. 25, 1952.

Rehearing Denied Oct. 16, 1952.

Dawson & Dawson, Corsicana, for appellant.

Hancock & Hancock, Ralph Hartman, Waxahachie, for appellee.

HALE, Justice.

Appellant sued appellee on a written lease contract to recover $1,750 as damages arising from the latter's refusal to repair a portion of the improvements situated on the leased premises after the same had been partially destroyed by fire. The case was submitted to the court below upon an agreed statement of facts and resulted in judgment denying appellant any recovery of the damages sought by him. Appellant perdicates his appeal upon the following point of error, viz.: "The court erred in holding that the plaintiff was not entitled to recover from the defendant the cost of repairs incurred by reason of the partial destruction of the improvements on the leased premises, the lease providing that the defendant shall maintain in good repair and condition the premises demised, without exception as to fire or other such casualty."

On January 26, 1951, the parties entered into a written contract by the terms of which appellant leased to appellee, for a period of three years, certain premises situated in the City of Corsicana, "improved with a filling station building and equipment for the operation of same, together with a general grocery store." Appellee agreed to pay as rental for the leased premises a sum equal to 1¢ per gallon on the gasoline to be sold by him and the additional sum of $50 per month, it being understood that the 1¢ per gallon on the gasoline to be sold was to cover the rental on that part of the demised premises which were to be used for the sale of gasoline and petroleum products and the $50 per month was for the privilege of conducting a grocery business on the premises. Paragraph 5 of the lease contract relates to the subject of repairs and reads in its entirety as follows:

"Party of the Second Part (appellee) is accepting the property in reasonable and workable condition for the operation of a gasoline filling station. The said Party of the Second Part shall maintain in good repair and condition the premises hereby demised, together with all equipment and improvements situated thereon, and at the expiration of the term of this lease the said Party

of the Second Part shall peaceably yield up unto Party of the First Part all and singular the premises and all further erections and additions to or upon the same in good tenantable repair in all respects; or the said Party of the Second Part may at the expiration of the term of this lease remove all improvements placed by him on said property, provided the said Party .of the Second Part shall restore said property and put same back in its original condition as same existed at the date of this lease. It is hereby agreed, however, on the part of the Party of the First Part, that in the event it becomes necessary to make any structural repairs to the roof or main walls of the building, or in the event any alterations or improvements are necessary, that same shall be provided by Party of the First Part; provided, however, such repairs and improvements are to be made at the discretion of the Party of the First Part. Party of the First Part also agrees, at his discretion, to repair or replace worn out equipment that is used in connection with the sale of gasoline and petroleum products."

It was stipulated by the parties that a fire occurred on August 23, 1951, which partially destroyed the improvements on the demised premises; that "the damages attributable to the inside of the building on the demised premises by reason of the partial destruction by fire amounted to $1750.00"; that appellant demanded of appellee that he "repair and replace that portion of the improvements, if any, to be repaired and maintained by him under the terms of the lease contract" and that appellee refused to do so; that the improvements have not been rebuilt by appellant; and that the lease contract was terminated on October 1, 1951, when appellee as tenant surrendered the premises to appellant. It was further stipulated that "the question for determination before the court is the construction to be placed on that portion of the lease which contains a covenant on the part of the lessee to maintain in good repair and condition the premises, and whether this provision is applicable upon the

destruction of any part of the demised premises by fire."

It is elemental that a lease contract, like other written agreements, should be given a reasonable construction that will carry out the intention of the parties as expressed by the language used in the contract. Therefore, in arriving at the true intention of the parties to this suit with respect to the lessee's expressed covenant to maintain the leased premises in good repair and condition during the term of the lease, the courts should consider all of the material provisions contained in the contract relating to the subject of repairs, giving effect to the reasonable sense and meaning of the words employed therein.

In the early case of Howeth v. Anderson, 25 Tex. 557, the Supreme Court of Texas held that a lessee's covenant to redeliver a steam sawmill at the expiration of the term of the lease in as good order as when it was received, excepting usual wear and tear and unavoidable accidents, did not render the lessee liable in damages for the accidental loss of the premises by fire. In the course of its opinion the Court said: "Looking to the terms and subject matter of the contract, we do not think it reasonable or fair to conclude that the parties contemplated that the lessees were to become insurers of the property against those casualties which ordinary prudence and foresight could not have guarded against; or that it was supposed or intended that they were to become liable to repair the loss in case of accidental destruction of the property by fire without negligence or fault on their part. * * * It would have been a very extraordinary liability for the lessee to assume; and, if intended, it would doubtless have been clearly expressed in the lease."

Again, the Supreme Court held in the case of Miller Billups & Co. v. Morris, 55 Tex. 412, that a lessee's covenant to redeliver or restore to the lessor the leased premises in as good repair and condition at the termination of the lease as when received by the tenant, did not bind the covenantor to rebuild in case of casual destruction by fire, or impose the burden

of loss on him. In disposing of the appeal the Court expressly approved the following proposition: "It is not within the intendment and according to general understanding that such stipulation imposes on the tenant the responsibility of insurer. If that greater risk is assumed, it must be clearly and explicitly set forth in the contract."

As we understand appellant's brief, he concedes in effect that a covenant on the part of a tenant merely to redeliver the leased premises to the landlord in a good state of repair upon the termination of the lease, standing alone, is not sufficient to render the lessee liable in damages for a partial destruction of improvements on the leased premises resulting from fire of unknown origin. However, he insists that in this case appellee's obligation to maintain the leased premises "in good repair and condition" constituted a general covenant on his part to repair any damage done to the inside of the building on the demised premises by reason of its partial destruction by fire, even though such fire and the loss resulting therefrom was without negligence or fault on the part of appellee, so as to render appellee liable for the damages sought by him. In support of his contention he cites the following authorities: Martinez v. Thompson, 80 Tex. 568, 16 S.W. 334; Norman v. Stark, Tex.Civ.App., 237 S.W. 963, er. ref.; Arnold-Evans Co. v. Hardung, 132 Wash. 426, 232 P. 290, 45 A.L.R. 9; Annotation in 45 A.L.R. at page 12 et seq.; 32 Am.Jur. 675; 32 C.J. 145, 43 C.J.S., Injunctions, § 67; 27 Tex.Jur. 336. We cannot agree with this contention.

The lease contract here under consideration contained no direct reference to the subject of repairs or to the rights or obligations of the parties with respect thereto except as set forth in paragraph 5 of the contract. It will be noted that such paragraph consists of four sentences. The first sentence is in substance a recital, contractual in nature, to the effect that the demised premises were in such reasonable condition at the time the contract was entered into as to render the same tenantable and suitable for the intended purpose of operating a gasoline filling station. The second sentence was in effect a covenant on the part of appellee to "maintain in good repair and condition" the premises demised and upon the termination of the lease to surrender the premises "in good tenantable repair in all respects." However, the effect of the third and fourth sentences was to place a definite limitation upon the covenant of appellee to repair the demised premises in that the parties expressly agreed thereby that appellee was not obligated to make any "structural repairs to the roof or main walls of the building", or any "alterations or improvements," or "to repair or replace" worn out equipment used in connection with the contemplated sale of gasoline, such repairs, replacements, alterations and improvements, if any, to be made at the discretion and expense of appellant.

In order to establish his asserted right of recovery it was necessary for appellant to show a breach of the contract sued upon and the amount of damages resulting from such breach. Under the meager record before us we cannot say he has conclusively shown either of these necessary prerequisites. Not only were the provisions in the contract with respect to the subject of repairs uncertain in meaning by reason of such descriptive terms as "workable condition", "good repair and condition", "tenantable repair", and "structural repairs", but the stipulated facts relating to the nature and extent of the injury and damage done to the building by fire were also vague, general and indefinite. Even though the legal effect of the second sentence in paragraph 5 of the contract, if standing alone, could properly be regarded as a general covenant on the part of appellee to repair any damage done to the building, as distinguishable from a mere covenant to redeliver the premises at the termination of the lease in a good state of repair, it is quite clear that appellee was expressly exempted, by the third sentence, from any obligation to make any "structural repairs" to the roof or main walls of the building, whether the injury or damage necessitating such repairs be to the inside or outside of the roof or walls.

Furthermore, we think it would be unreasonable to assume that the inside of the

building could be damaged by fire to the extent of $1,750 without it becoming necessary to make some character of repairs to the roof or main walls of the building. But neither appellant nor appellee was obligated under the contract to make any structural repairs to the roof or main walls of the building in the event they were injured or damaged by fire or any other casualty. Therefore, regardless of what the exact intentions of the parties might have been with respect to the general subject of repairs as expressed in the contract, we cannot say from the record before us that it was within their intendment for appellee thereby to assume the unusual responsibility of insuring appellant, either in whole or in part, against any substantial loss resulting from the perils of accidental fire. Howeth v. Anderson, 25 Tex. 557; Miller Billups & Co. v. Morris, 55 Tex. 412; Anderson v. Ferguson, 17 Wash.2d 262, 135 P.2d 302; 45 A.L.R. Annotation at pages 12 et seq.

Accordingly, appellant's point of error is hereby overruled and the judgment appealed from is affirmed.

LESTER, C. J., took no part in the consideration and disposition of this case.