**WEISS v. MITCHELL.**

**No. 11105.**

Court of Civil Appeals of Texas. Dallas.
Feb. 11, 1933.

Rehearing Denied March 18, 1933.

W. P. Donalson and Muse & Muse, all of
Dallas, for appellant.

Coke & Coke and Thos. G. Murnane, all of
Dallas, for appellee.

BOND, Justice.

This is an action by G. A. Mitchell against
Martin Weiss. From a judgment of the lower
court defendant makes his second appeal;
the former appeal is reported in 26 S.W.(2d)
699.

On November 8, 1924, appellee, G. A. Mitch-
ell, leased to appellant, Martin Weiss, two
two-story brick buildings, situated in the city
of Dallas, Tex., and known as 907 Elm street
and 906 Pacific avenue, and 909 Elm street
and 908 Pacific avenue. The buildings are
adjacent to each other and extend north and
south from Elm street back to Pacific avenue.
The term of the lease was for five years, be-
ginning January 1, 1925; the tenant, Weiss,
agreed to pay to the landlord, Mitchell, as rent,
$450 per month for the first two years, and
$500 per month for the last three years. The
covenants in the lease, regarded as material
to this appeal, are as follows:

"2. That the lessee shall take good care of
the property and its fixtures, and suffer no
waste; and shall, at his own expense and
cost, keep said premises in good repair, keep
the plumbing work, closets, pipes and fixtures
belonging thereto in repair; * * * dur-
ing the hereby granted term of five years, and
at the end of other expiration of the term
shall deliver up the demised premises in good
order and condition, natural wear and tear
and damages by fire and the elements only
excepted. * * *"

"5. That the lessee shall, in case of fire,
give immediate notice to the lessor, who shall
thereupon cause the damage to be repaired
forthwith. * * *"

"6. * * * The said lessee hereby under-
takes to make any repairs necessary for the
occupation of the property known as No. 907
Elm Street and No. 906 Pacific Avenue at his
own expense, and the lessor is to be at no ex-
pense whatever for either of said properties
during the currency of this lease."

On April 27, 1927, fire damage was occa-
sioned to the west building, known as 907 Elm
street and 906 Pacific avenue, and the lessor

166

immediately undertook to repair such damages. All rents were paid under the lease up to the time of the fire, and thereafter $277.75 was paid while the repairs were being made, as an agreed rent to June 1, 1927, and a like amount was thereafter tendered by the lessee to the lessor up to the time lessee abandoned the premises in July, 1929, which tender the lessor refused.

On June 1, 1927, after being advised by the lessor that the fire damage to the lease premises had been repaired, and the premises restored to its former condition, the lessee declined to accept the building, and immediately sought to cancel the lease, on the ground that the fire covenant had not been complied with by the lessor. Notwithstanding his efforts to cancel the contract, the lessee continued in possession of the lease premises, occupying and using the east building until July 10, 1929, when he abandoned it.

Appellant seeks a diminution of rents under the contract for the time he occupied and used the east building; a cancellation of the contract for the unexpired term of the lease; and, by way of a cross-action, for damage to his stock of goods, wares, and merchandise, all on account of the failure of appellee to repair the fire damage to the west building, and the negligent manner in which such repairs were undertaken. The trial court sustained exceptions to and dismissed appellant's cross-action for damages to his stock of goods, wares, and merchandise.

The case was tried to a jury, and evidence is found in the record sufficient to support the finding that appellee repaired such damages as resulted to the lease premises by fire; appellee restored the premises to as good condition as it was in before the fire; that appellant did not make such repairs necessary for the occupation of the west building, and did not keep the lease premises, plumbing work, closets, pipes, and fixtures in good repair throughout the term of the lease. Appellee suffered damages in the sum of $256.45, for the failure of appellant to make repairs necessary for the occupation of the west building, and $1,232.47, for his failure to keep the premises, plumbing work, closets, pipes, and fixtures in good repair throughout the term of the lease. That appellant did not cause injury or damage to any portion of the lease premises subsequent to June, 1927.

On such findings, the court rendered judgment in favor of appellee against appellant for the amount of the unpaid rent under the contract from June 1, 1927 to December 31, 1929, and 6 per cent. interest on each monthly installment since due, and for $1,488.92, the amount found by the jury as damages for failure to repair the west building and keep the lease premises in repair.

■ It is a recognized rule of law that, in actions for rent, a tenant may plead, by way of reconvention for damages sustained on account of the failure of a landlord to perform a covenant to repair, or the tenant may plead for a diminution of rents for such failure, but to permit a recovery for damages, and also recovery for a diminution of rents for the breach of such covenant, would be allowing double recovery. Oscar v. Sackville (Tex. Civ. App.) 253 S. W. 651, and authorities therein cited.

■ In the instant case, there is no covenant that appellee was to repair the demised premises, except in case of fire, and, in the absence of such a covenant, there is no implied warranty on the part of appellee that either of the lease buildings is in a tenantable condition, or would be kept in such condition. If appellant suffered injury or damages to his goods, wares, or merchandise, for which appellee could be held legally liable, it could only be recovered under the terms of the contract—for a failure to perform the covenant to repair the fire damage to the lease premises.

■ The buildings were repaired and restored to their former condition before the occurrence of any alleged damage to appellant's goods. The evidence is sufficient to sustain the jury's findings on that issue, and we are not authorized to disturb its findings. Perez v. Rabaud, 76 Tex. 191, 13 S. W. 177, 7 L. R. A. 620. There are three covenants by the lessee in the contract, viz.: (1) A covenant to make any repairs necessary for the occupation of the west building; (2) a covenant to keep the lease premises in good repairs; and (3) a covenant to surrender the lease premises at the end of the term in good order and condition, natural wear and tear and damage by fire, and elements, only excepted.

■ The west building was evidently in a bad state of repair when appellant rented it. No question is made as to the necessity for the repairs, and the rights of the parties must depend upon the construction of the lease contract. In the contract, appellant obligated himself to make the repairs necessary for its occupation at his own expense, and that appellee was to be at no expense whatever on the properties during the currency of the lease, except in case of fire. In the absence of such covenant, it may be conceded that appellant took the west building, in its dilapidated and almost uninhabitable condition, and no duty would rest upon him to make repairs necessary to preserve the property and to make it tenantable, and keep it in such repairs to the end of the lease. The term "make repairs" is not ambiguous; "repairs" means to "mend, remedy, restore; to restore to a sound, good or complete state after decay, injury, dilapidation, or partial destruction; restore, renovate." Webster. It must be presumed that the parties to the con-

tract used the term "repair" in its ordinary sense. In the case of Martinez v. Thompson, 80 Tex. 568, 16 S. W. 334, 335, the Supreme Court, in construing a covenant in a contract similar to the one in the instant case, construed the obligation of the parties hereto in the following language:

"It appears that the house was in bad condition when Martinez rented it, and that on this account he paid a less rental than the property would otherwise have brought; and it further appears that he desired to use it for a wholesale and retail tobacco and cigar store, a use to which it seems not to have been before applied, and that to adapt the house to his business it became necessary, or at least desirable, to make alterations or additions.

"In view of these facts, we are of opinion that Martinez obligated himself by the contract to bear all such expenses as might be incurred in making alterations or additions such as he might deem necessary or desirable to fit the house for the business which he contemplated carrying on in it, and that such alterations or additions were, within the meaning of the contract, improvements. He, however, obligated himself to bear the expenses of 'repairing' the leased premises, and the parties must be presumed to have used that word in its ordinary sense, except as this is shown to have been restricted in its application by other parts of the contract."

■■ The construction of an unambiguous contract is for the courts. Shepherd v. White, 11 Tex. 346; Cook v. Dennis, 61 Tex. 246; San Antonio Machine & Supply Co. v. Allen (Tex. Com. App.) 284 S. W. 542; Holt v. Wilson (Tex. Civ. App.) 55 S.W.(2d) 580. The contract itself, taken in connection with the actual condition of the lease premises and the evidentiary facts, showing a construction placed on the contract by the parties themselves, are indispensable aids to the court in arriving at its interpretation of the language and terms ordinarily used and were used by the parties to the contract.

■ Appellee introduced in evidence a letter by appellant to A. G. Wood, agent for appellee, in reference to the lease, dated prior to the execution of the contract; the letter being as follows:

"October 31, 1924

"Mr. A. G. Wood, 1409 Magnolia Bldg., Dallas, Texas.

"My dear Sir: In reference to our conversation a few days ago, I, herewith, advise you that I will lease the Mitchell property located at 907 and 909 Elm Street from you, beginning the first of January, 1925, for a term of five years, paying you a rental for the 909 building, which you are now repairing, $300.-00 per month and the 907 building $150.00 per month for two years, and after two years I will pay you $200.00 per month.

"As soon as I occupy the 907 building I will repair, repaper and paint the same at my own expense. Of course, it is understood that the building at 909 Elm Street will be remodeled in first-class condition, lower and second floors will be in one continuous length without any partitions in it and the front and back all repaired in first-class condition.

"If possible I would like to have an option to purchase these two buildings at the prevailing market price whenever I am ready. I would thank you to confirm these arrangements and oblige.

"Yours very truly,

"[Signed]   Martin Weiss [in ink].

"Accepted [in typewriting] except option as to purchase is modified to the extent that you will be permitted to make a bid for the property a little over that offered by other parties.

"[Signed]   Martin Weiss."

The letter was clearly admissible to show the understanding of the parties in reference to the repairs, and when they were to be made. Its introduction in evidence is not based on the contract being ambiguous, it does not tend to vary or alter the written obligation. It is to be construed as an explanation, making more certain the rights of the parties under the contract, and their intentions in using the words "make repairs."

In the case of Ryan v. Kent (Tex. Com. App.) 36 S.W.(2d) 1007, 1010, the court cited with approval the rule laid down in Reed v. Insurance Co., 95 U. S. 23, 30, 24 L. Ed. 348, wherein the court said:

"Although a written agreement cannot be varied (by addition or subtraction) by proof of circumstances out of which it grew and which surrounded its adoption, yet such circumstances are constantly resorted to for the purpose of ascertaining the subject-matter and the stand-point of the parties in relation thereto. Without some knowledge derived from such evidence, it would be impossible to comprehend the meaning of an instrument, or the effect to be given to the words of which it is composed. This preliminary knowledge is as indispensable as that of the language in which the instrument is written. A reference to the actual condition of things at the time, as they appeared to the parties themselves, is often necessary to prevent the court, in construing their language, from falling into mistakes and even absurdities. * * * 'It may, and indeed it often does, happen, that, in consequence of the surrounding circumstances being proved in evidence, the courts give to the instrument, thus relatively considered, an interpretation very different from what it would have received, had it been considered in the abstract. But this is only just and proper; since the effect of the evidence is not to vary the language employed, but merely to explain the sense in which the writer understood it.'"

Appellant contends that the trial court, in submitting the special issue to the jury, as to whether appellant kept the lease premises in repair throughout the term of the lease, erred in giving the following charge: "In answering special issue No. 5, you are instructed that you must exclude and not consider any repairs to the leased premises in question rendered necessary as the result of damage done to said premises by the fire which occurred on April 27th, 1927. You must confine your findings in your answer to said Special Issue No. 5 to such repairs as were not contributed to or rendered necessary by reason of damage done to said premises by said fire."

It is the duty of trial courts to guide the jury in appropriate explanations of words and terms used in submitting special issues, and the instruction complained of does not violate the rule of law prohibiting a general charge. It eliminates from the consideration of the jury any damage to the lease premises occasioned by fire, for which appellant is expressly relieved to repair.

We have carefully considered each of appellant's assignments and find no error; same are expressly overruled. From what we have said, the judgment of the lower court is affirmed.

Affirmed.